UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TOMITA TECHNOLOGIES USA, LLC, and TOMITA TECHNOLOGIES INTERNATIONAL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> NINTENDO CO., LTD. and NINTENDO OF AMERICA INC., <br><br> Defendants. | 11 Civ. 04256 (JSR) <br> ECF Case |

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>DEFENDANTS' MOTION TO TRANSFER</u>

60267974

**TABLE OF CONTENTS**

Page

I. INTRODUCTION .................................................................................................................. 1

II. BACKGROUND .................................................................................................................... 2
    A. The Parties ................................................................................................................. 2
        1. Tomita Technologies International, Inc. ........................................................ 2
        2. Tomita Technologies USA, LLC .................................................................. 2
        3. Mr. Seijiro Tomita ......................................................................................... 3
        4. Nintendo Co., Ltd. ......................................................................................... 3
        5. Nintendo of America Inc. .............................................................................. 3

III. ARGUMENT .......................................................................................................................... 4
    A. Legal Standard ........................................................................................................... 4
    B. This Case Should Be Transferred to the Western District of Washington. .............. 5
        1. This Action Could Have Been Brought in the Western District of
           Washington. ................................................................................................... 5
        2. The Relevant Factors Support Transferring This Action to the
           Western District of Washington. .................................................................. 5
           a. The Locus of Operative Facts Is Nintendo's Headquarters
              in Redmond, Washington and Kyoto, Japan. .................................. 6
           b. The Western District of Washington is the Most
              Convenient Forum for the Witnesses. ............................................. 7
           c. The Relevant Documents are Located in the Western
              District of Washington and Japan. ................................................... 9
           d. The Western District of Washington is a More Convenient
              Forum for the Parties. ..................................................................... 10
           e. Little Weight Should be Given to Tomita's Choice of
              Forum. ............................................................................................. 11
           f. The Availability of Process to Compel the Attendance of
              Unwilling Witnesses Does Not Weigh in Favor of Transfer. ........ 13
           g. Tomita Has the Means to Litigate in Washington. ........................ 13
           h. The Western District of Washington Has Experience
              Handling Patent Lawsuits. .............................................................. 14
           i. The Western District of Washington Will Efficiently
              Manage and Adjudicate This Case. ............................................... 14

IV. CONCLUSION ..................................................................................................................... 14

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Amerisham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*,
 11 F. Supp. 2d 729 (S.D.N.Y. 1998) (Rakoff, J.) ........................................................... passim

*Colida v. Panasonic Corp. of North Am.*,
 No. 05 Civ 5791 (JSR), 2005 WL 3046298 (S.D.N.Y. Nov. 10, 2005) ..............................7, 11

*Frame v. Whole Foods Mkt., Inc.*,
 No. 06 Civ. 7058 (DAB), 2007 WL 2815613 (S.D.N.Y. Sept. 24, 2007) ...............................12

*Fuji Photo Film Co. v. Lexar Media, Inc.*,
 415 F. Supp. 2d 370 (S.D.N.Y. 2006) ............................................................................6, 9, 10

*Guan Gao Co., Ltd. v. Acco Brands Corp.*,
 No. 06 Civ. 8208 (JSR), 2007 WL 747795 (S.D.N.Y. March 9, 2007) ..................................14

*In re Microsoft Corp.*,
 630 F.3d 1361 (Fed. Cir. 2011) ...............................................................................................13

*In re Nintendo Co.*,
 589 F.3d 1194 (Fed. Cir. 2009) .................................................................................................5

*In re Zimmer Holdings, Inc.*,
 609 F.3d 1378 (Fed. Cir. 2010) ...............................................................................................13

*Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*,
 119 F. Supp. 2d 433 (S.D.N.Y. 2000) .....................................................................................11

*Maple Trade Fin., Inc. v. Lansing Trade Group LLC*,
 No. 09 Civ. 7457 (JSR), 2010 WL 99392 (S.D.N.Y. Jan. 6, 2010) ..................................4, 5, 9

*McCain v. Rahal Letterman Racing, LLC*,
 No. 07 Civ. 5729 (JSR), 2007 WL 2435170 (S.D.N.Y. Aug. 27, 2007) .................................14

*Millenium, L.P. v. Hyland Software, Inc.*,
 No. 03 Civ 3900 (DC), 2003 WL 22928644 (S.D.N.Y. Dec. 10, 2003) .............................6, 12

*Serconet, Ltd. v. Netgear, Inc.*,
 No. 06 Civ. 5026 (JSR), 2006 WL 2109462 (S.D.N.Y. July 27, 2006) ....................4, 6, 11, 14

*Twinde v. Threshold Pharm., Inc.*,
 Nos. 07 Civ. 6227 (JSR), 07 Civ. 6490 (JSR), 2007 WL 2746814 (S.D.N.Y. Sept. 7,
 2007) ........................................................................................................................................11

*Walker v. Jon Renau Collection, Inc.*,
 423 F. Supp. 2d 115 (S.D.N.Y. 2005) ...............................................................................10, 12

Page(s)

**STATUTES**

28 U.S.C. §1391(c) ...........................................................................................................5
28 U.S.C. §1404(a) ......................................................................................................1, 4

Pursuant to 28 U.S.C. §1404(a), defendants Nintendo, Co. Ltd. and Nintendo of America Inc. (collectively, "Nintendo") respectfully submit this memorandum of law in support of their motion to transfer this action to the Western District of Washington.

I.    INTRODUCTION

This is a patent infringement case. The patent-in-suit – U.S. Patent No. 7,417,664 entitled "Stereoscopic Image Picking Up and Display System Based Upon Optical Axes Cross-Point Information" (the "'664 patent") – was allegedly invented by Mr. Seijiro Tomita. Mr. Tomita will be a key witness in this case. He resides in Japan, not New York. The '664 patent is allegedly owned by plaintiff Tomita Technologies, Inc. ("Tomita-Japan"), a Japanese corporation with its place of business in Tokyo. Plaintiff Tomita Technologies, Inc. ("Tomita-US"), which is allegedly the exclusive licensee of the '664 patent, was incorporated in New York just two months before this lawsuit was filed. Tomita-US's supposed place of business is an apartment on the Upper East Side of Manhattan, and it does not appear to have any employees or ongoing business operations in New York (or elsewhere). Instead, Tomita-US appears to be nothing more than a vehicle created shortly before the filing of this litigation for purposes of creating the appearance that venue is convenient in the Southern District of New York. As such, little deference should be given to plaintiffs' choice of forum on this motion.

The accused product – the Nintendo 3DS handheld gaming system – was primarily designed and developed in Kyoto, Japan by engineers at defendant Nintendo Co, Ltd. ("NCL"), a Japanese corporation headquartered in Kyoto, Japan. Defendant Nintendo of America Inc. ("NOA") is a Washington corporation, headquartered in Redmond, Washington. NOA is primarily responsible for the marketing, sales, and distribution of the Nintendo 3DS system in North America. As a result, (1) the locus of operative facts in this case is the Western District of

Washington and Japan, not New York, and (2) Nintendo's witnesses are located in the Western District of Washington and in Japan; none are located in New York.

In sum, this case has no relevant connection to the Southern District of New York, and substantial connection to the Western District of Washington, where it indisputably could have been brought in the first place.  All of the nine factors applied when assessing a motion to transfer venue either weigh in favor of transfer or are neutral.  Accordingly, this case should be transferred to the Western District of Washington.

**II.     BACKGROUND**

    A.     The Parties

        1.     <u>Tomita Technologies International, Inc.</u>

Plaintiff Tomita-Japan is a corporation organized under the laws of Japan, with a principal place of business in Tokyo, Japan.  *See* Complaint ¶10.  Tomita-Japan is the purported owner of the '664 patent.  *See id.* ¶11.

        2.     <u>Tomita Technologies USA, LLC</u>

Plaintiff Tomita-US is a limited liability company organized under the laws of the State of New York.  *See* Complaint ¶8; Declaration of James S. Blank ("Blank Dec."), Ex. 1 (Articles of Organization for Tomita-US).  Tomita-US was incorporated on April 21, 2011.  *See* Blank Dec., Ex. 1.  Tomita-US is the purported exclusive licensee of the '664 patent.  *See* Complaint ¶9.  Tomita-US allegedly has a "place of business" on the Upper East Side of Manhattan at 50 East 77th Street, Apt. 8A.  *See* Complaint ¶8; Civil Cover Sheet.  This address is a co-op apartment in a building named "The Carlyle House" (adjacent to The Carlyle Hotel) owned by Mr. Clifford David.  *See* Blank Dec., Exs. 2 and 3 (print-outs of UCC Financing Statement from the NYC Department of Finance website and webpage from www.streeteasy.com identifying Clifford David as owner).

3. <u>Mr. Seijiro Tomita</u>

Mr. Seijiro Tomita is the named inventor of the '664 patent. *See* Complaint ¶¶2, 6 and Ex. A thereto. Mr. Tomita resides in Tokyo, Japan, not New York. *See* Complaint, Ex. A (face of the '664 patent listing Tokyo, Japan as Mr. Tomita's address); Blank Dec. ¶3. As Mr. Tomita allegedly worked for Sony Corporation in Japan until 2002 and the application which led to the issuance of the '664 patent was filed on March 20, 2003 (*see* Complaint ¶3 and Ex. A), Mr. Tomita presumably conceived and reduced to practice the purported inventions of the '664 patent in Japan, not New York.

4. <u>Nintendo Co., Ltd.</u>

NCL is a corporation organized under the laws of Japan, with its headquarters in Kyoto, Japan. *See* Complaint ¶12; Declaration of Toshiro Hibino ("Hibino Dec.") ¶3. NCL was incorporated in 1889 to manufacture and sell Japanese playing cards, and expanded to the home entertainment industry in the 1970s. *See id.* The accused product in this case – the Nintendo 3DS handheld gaming system – was primarily designed and developed by NCL in Japan. *Id.* ¶¶5, 7.

5. <u>Nintendo of America Inc.</u>

NOA is a corporation organized under the laws of the State of Washington, with its principal place of business in Redmond, Washington. *See* Complaint ¶13; Declaration of Jacqualee Story ("Story Dec.") ¶3. NOA was incorporated in 1982, as a wholly owned subsidiary of NCL. *Id.* ¶4. NOA is primarily responsible for the marketing, sales and distribution of Nintendo products in North America, including the Nintendo 3DS system. *Id.* ¶5.

**III.   ARGUMENT**

   **A.   Legal Standard**

Under 28 U.S.C. §1404(a), a district court may transfer a civil action "[f]or the convenience of parties and witnesses [and] in the interests of justice" to any other district court "where it might have been brought." A motion to transfer requires a two-part inquiry. First, the Court must decide whether the action could have been brought in the transferee court. Second, the Court must decide whether transfer is appropriate for the "convenience of the parties and witnesses" and "the interests of justice." *See Serconet, Ltd. v. Netgear, Inc.*, No. 06 Civ. 5026 (JSR), 2006 WL 2109462, at *1 (S.D.N.Y. July 27, 2006) (granting motion to transfer venue in patent case). On the second inquiry, courts typically consider the following nine factors:

1. the convenience of the witnesses;
2. the location of relevant documents and relative ease of access to sources of proof;
3. the convenience of the parties;
4. the locus of operative facts;
5. the availability of process to compel the attendance of unwilling witnesses;
6. the relative means of the parties;
7. the forum's familiarity with the governing law;
8. the weight given to plaintiff's choice of forum; and
9. trial efficiency and the interests of justice.

*See Maple Trade Fin., Inc. v. Lansing Trade Group LLC,* No. 09 Civ. 7457 (JSR), 2010 WL 99392, at *2 (S.D.N.Y. Jan. 6, 2010) (granting motion to transfer venue); *Amerisham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, 11 F. Supp. 2d 729, 730-31 (S.D.N.Y. 1998) (Rakoff, J.) (granting motion to transfer venue in patent case). The nine factors need not be weighted

equally.  *See Maple Trade Fin.*, 2010 WL 99392, at *1.  However, "'the convenience of the witnesses' and 'location of relevant documents and relative ease of access to source of proof' loom large[] when [as in this case] deciding between fora separated by roughly 3,000 miles." *Amerisham*, 11 F. Supp. 2d at 730.

   B. This Case Should Be Transferred to the Western District of Washington.

     1. This Action Could Have Been Brought in the Western District of Washington.

Tomita could have brought its patent infringement action against both NOA and NCL in the Western District of Washington.  This factor is easily satisfied in this case pursuant to 28 U.S.C. §1391(c), which states that "[f]or purposes of venue under this chapter,...a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  28 U.S.C. §1391(c) (2010).

Here, NOA is unquestionably subject to personal jurisdiction in the Western District of Washington by virtue of the location of NOA's principal place of business in Redmond, Washington.  Venue in the Western District of Washington would also be proper for NCL, given that NCL has the same contacts in the Western District of Washington that support venue in the Southern District of New York.  Accordingly, venue in the Western District of Washington is proper.  *See, e.g., In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009) (finding that patent infringement lawsuit could have been brought against NCL and NOA in the Western District of Washington).

     2. The Relevant Factors Support Transferring This Action to the Western District of Washington.

For the reasons discussed below, when the nine factor test is applied to this case, the analysis tips strongly in favor of transferring venue to the Western District of Washington.

          a.        The Locus of Operative Facts Is Nintendo's Headquarters in Redmond, Washington and Kyoto, Japan.

When deciding a motion to transfer, the "locus of operative facts" is usually a critical factor. This is because where the operative facts occur is typically the same place where the key witnesses and relevant documents will reside. "In patent infringement cases, the locus of operative facts is where the allegedly infringing product was designed, developed, and managed." *Millennium, L.P. v. Hyland Software, Inc.*, No. 03 Civ. 3900 (DC), 2003 WL 22928644, at *5 (S.D.N.Y. Dec. 10, 2003); *see Fuji Photo Film Co. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 373 (S.D.N.Y. 2006) ("The key issues in a patent infringement suit involve the technology of the inventions claimed in the patents-in-suit.").

The accused Nintendo 3DS system was designed and developed primarily by NCL in Kyoto, Japan. Hibino Dec. ¶¶5, 7. NOA is primarily responsible for the marketing, sales and distribution of Nintendo products in North America, and key sales and marketing decisions related to the sale of Nintendo 3DS system in the United States occur at NOA's headquarters in Redmond, Washington. Story Dec. ¶¶5, 7.[1]

Accordingly, in this case, the locus of operative facts is the Western District of Washington and Japan. *See, e.g., Serconet*, 2006 WL 2109462, at *1 (locus of operative facts found to be the Northern District of California because defendant "manages the development of the allegedly infringing devices from its home base in Santa Clara, California and at its office in Taiwan"); *Amerisham*, 11 F. Supp. 2d at 730 ("The Northern District of California is clearly the locus of most of the operative facts of this case. The allegedly infringing device was developed

---

[1]     To the extent there are other facts in this case that may be deemed operative, such as the conception and reduction to practice of the alleged inventions of the '664 patent, they occurred in Japan, not New York. *See supra* at 3.

at Perkin-Elmer's Applied Biosystems Division within that district, and the resultant product line is managed there."); *Colida v. Panasonic Corp. of North Am.*, No. 05 Civ 5791 (JSR), 2005 WL 3046298, at *2 (S.D.N.Y. Nov. 10, 2005) ("The facts underlying this dispute occurred predominantly in New Jersey, as well as in Japan, where the Panasonic model KX-TG6502B cordless phone was designed, and in Indonesia and Malaysia, where the KX-TG6502B was manufactured."). Thus, this factor weighs in favor of transfer.

    b.  The Western District of Washington is the Most Convenient Forum for the Witnesses.

None of Nintendo's witnesses reside in New York. Rather, they all reside in either the Western District of Washington or Japan. In addition, a key Tomita witness – Mr. Tomita himself – also resides in Japan. The potential witnesses identified to date are:

- Jacqualee Story: Ms. Story is the Executive Vice President of Business Affairs for NOA. Ms. Story has knowledge about the background of NOA and Nintendo's products in general, including the Nintendo 3DS system, the general marketing and sales of Nintendo products in North America by NOA, and patent licensing. Ms. Story works at NOA's headquarters in Redmond, Washington.

- Rod Teuber: Mr. Teuber is the Corporate Controller for NOA. Mr. Teuber coordinates financial reporting activities for NOA and assures proper financial reporting and compliance with generally accepted accounting principles. Mr. Teuber has knowledge about sales and distribution of the Nintendo 3DS system in North America. Mr. Teuber works at NOA's headquarters in Redmond, Washington.

- Yasuyuki Asada: Mr. Asada is an Assistant Manager in NCL's Research and Engineering Department, and was responsible for the design and development of the Nintendo 3DS's cameras. Mr. Asada has knowledge about the design and development of the Nintendo 3DS's cameras. Mr. Asada works at NCL's headquarters in Kyoto, Japan.

- Tomohisa Kawakami: Mr. Kawakami is an employee in NCL's Research and Engineering Department, and was responsible for the design and development of the Nintendo 3DS's cameras. Mr. Kawakami has knowledge about the design and development of the Nintendo 3DS's cameras. Mr. Kawakami works at NCL's headquarters in Kyoto, Japan.

- <u>Fumihiko Inoue</u>:  Mr. Inoue is an employee in NCL's Research and Engineering Department, and was responsible for the design and development of the Nintendo 3DS's cameras.  Mr. Inoue has knowledge about the design and development of the Nintendo 3DS's cameras.  Mr. Inoue works at NCL's headquarters in Kyoto, Japan.

- <u>Takeshi Nishikawa</u>:  Mr. Nishikawa is an employee in NCL's Research and Engineering Department, and was responsible for the design and development of the Nintendo 3DS's cameras.  Mr. Nishikawa has knowledge about the design and development of the Nintendo 3DS's cameras.  Mr. Nishikawa works at NCL's headquarters in Kyoto, Japan.

- <u>Seijiro Tomita</u>:  Mr. Tomita is the named inventor of the '664 patent.  He undoubtedly has knowledge regarding at least the conception, reduction to practice and prosecution of the '664 patent.  He is also likely knowledgeable regarding ownership, licensing, prior art, and any commercial exploitation of the '664 patent.  Mr. Tomita resides in Japan.

*See* Story Dec. ¶¶13-15; Hibino Dec. ¶¶9-13; Complaint ¶¶4-7.

Moreover, to the extent Tomita-Japan has employees who might be witnesses, they likely reside in Japan, where Tomita-Japan is located.  There is no basis to believe that Tomita-US has any employees – let alone any witnesses with relevant information – given that its alleged "place of business" is an apartment on the Upper East Side of Manhattan.

The fact that the Western District of Washington is more convenient for NCL's witnesses is confirmed by the travel times between NCL in Kyoto, Japan and Seattle, on the one hand, and New York City, on the other.  Specifically, the time for NCL employees to travel to Seattle is approximately 11 hours versus approximately 14.5-18 hours for NCL employees to travel to New York City (depending on whether they fly from Osaka or Tokyo and whether they fly directly).  *See* Blank Dec.¶¶7-16 and Exs. 4-8.  Of course, the Western District of Washington is more convenient for NOA's witnesses since they live there and would not have to travel at all.  Finally, the fact that the Western District of Washington is more convenient for Mr. Tomita himself, who lives in Tokyo, is confirmed by the travel times between Tokyo and Seattle, on the

one hand, and Tokyo and New York City, on the other.  It will take Mr. Tomita approximately 8 hours and 45 minutes to travel from Tokyo to Seattle versus approximately 12 hours 45 minutes for him to travel from Tokyo to New York City.  *See id.* ¶¶14-15, 17 and Exs. 9 and 10.

Thus, the Western District of Washington is a far more convenient forum for both side's witnesses.  NOA's witnesses work and reside there and would thus not have to travel and be away from their workplace and families for an extended time period.  *See* Story Dec. ¶16.  NCL's witnesses would have to travel a much shorter distance and would be able to work from NOA's headquarters in Redmond, Washington, thereby minimizing the disruption to Nintendo's business.  *See* Hibino Dec. ¶14.  Indeed, the Western District of Washington appears to be a more convenient forum even for Mr. Tomita, given that he resides in Japan and would also have a shorter travel distance.  Accordingly, the convenience of the witnesses factor weighs in favor of transfer.

      c.  The Relevant Documents are Located in the Western District of Washington and Japan.

The Court may also consider the location of the relevant documents in this litigation.  *See, e.g., Maple Trade Fin.*, 2010 WL 99392, at *1 (considering location of documents on transfer motion).  This factor is more important when, as here, the current forum and the transferee forum are a significant distance apart.  *See Amerisham*, 11 F. Supp. at 730.  In patent infringement cases, most of the relevant evidence consists of the technical documents describing the design and operation of the accused products.  *See Fuji Photo,* 415 F. Supp. 2d at 374 (granting motion to transfer venue).  Here, the technical documents regarding the Nintendo 3DS system are located at NCL's headquarters in Kyoto, Japan, nearly 10,000 miles away from the current forum.  *See* Hibino Dec. ¶8.  In addition, most of the marketing, sales and financial documents regarding the Nintendo 3DS system are located at NOA's headquarters in Redmond,

Washington, with some in Redwood City, California and New York. *See* Story Dec. ¶8.[2] Also, given that the '664 patent owner, Tomita-Japan, as well as Mr. Tomita, reside in Japan, it stands to reason that documents relating to the conception, reduction to practice, ownership, prosecution, licensing and any commercial exploitation of the '664 patent are also located in Japan. Thus, the "location of the relevant documents" factor weighs in favor of transferring venue to the Western District of Washington.

     d.  The Western District of Washington is a More Convenient Forum for the Parties.

In the event that this case were to proceed in the Southern District of New York, both sides would have to travel thousands of miles to New York. However, if this case is transferred to the Western District of Washington, the hardship of travel and disruption to business would be eliminated for NOA, and significantly lessened for both NCL and Tomita (as its main witness, Mr. Tomita, lives in Japan). *See Walker v. Jon Renau Collection, Inc.*, 423 F. Supp. 2d 115, 118 (S.D.N.Y. 2005) (granting motion to transfer where "the hardship of travel on defendant will be eliminated [by transfer], while the hardship of travel on plaintiff will only slightly be increased, since she would have to travel from London regardless of where the case is decided"); *Fuji Photo*, 415 F. Supp. 2d at 374 (granting motion where transfer from New York to California would shorten both parties' and witnesses' trips from Japan by "several hours and 3000 miles").

---

[2]  NOA has a small office in New York City where approximately 35 employees work. The office is responsible for the design of Nintendo's consumer-facing websites, such as Nintendo.com and Nintendo3DS.com. The vast majority of employees in the New York office are dedicated to website activities, with a small number of employees responsible for trend and entertainment marketing sales. The office does not employ anyone with knowledge relevant to this lawsuit. *See* Story Dec. ¶9.

Thus, transferring venue to the Western District of Washington would minimize the overall burden on both sides, and the convenience of the parties factor weighs in favor of transfer.

e. Little Weight Should be Given to Tomita's Choice of Forum.

Where the connection between plaintiff's claims and the Southern District of New York is "tenuous," "the plaintiff's selection of this forum has an artificial quality that entitles a court to give it less weight." *Amerisham*, 11 F. Supp. 2d at 730; *see Twinde v. Threshold Pharm., Inc.*, Nos. 07 Civ. 6227 (JSR), 07 Civ. 6490 (JSR), 2007 WL 2746814, at *1 (S.D.N.Y. Sept. 7, 2007) ("While plaintiffs' choice of forum is normally given considerable weight, here the choice of the Southern District of New York is so patently artificial as to deserve less consideration"); *Serconet*, 2006 WL 2109462, at *2 ("where the plaintiff itself has it principal base elsewhere [], less weight is accorded this factor").  For example, in *Amerisham*, this Court found the plaintiff's connection to this forum "tenuous" where "the only apparent connections between this litigation and the Southern District of New York are (1) the fact that [defendant] Perkin-Elmer is incorporated in New York and (2) the allegations that 112 of the allegedly infringing devices were sold to New York customers." *Amerisham*, 11 F. Supp. 2d at 730.

Here, the connection between plaintiffs' claims and the Southern District of New York is nonexistent.  The Nintendo 3DS system is sold on a nationwide basis in all 50 states, at major retailers including Best Buy, Costco, Gamestop, K-Mart, Sears, Staples, Target, Toys R Us, Walmart and Amazon.  *See* Story Dec. ¶11; s*ee, e.g., Invivo Research, Inc. v. Magnetic Resonance Equip. Corp.*, 119 F. Supp. 2d 433, 439-40 (S.D.N.Y. 2000) ("Where a party's products are sold in many states, sales alone are insufficient to establish a material connection to the forum and to override other factors favoring transfer."); *Colida.*, 2005 WL 3046298, at *2 ("that some of the accused phones may have been marketed or sold in New York does not

establish a material connection to the present litigation"); *Millennium*, 2003 WL 22928644, at *6 (where defendant sells accused products in many states, "the existence of sales in New York is not dispositive"); *Walker*, 423 F. Supp. 2d at 119 ("Where the nexus of the allegedly infringing activity is in the transferee District, it is insufficient to find a connection to New York based solely on sales of the product that took place here."). Thus, there is no "special concentration of sales in New York." *See Amerisham*, 11 F. Supp. 2d at 730.

Furthermore, the existence of the Nintendo World store in New York – a store that has no connection to the key patent issues in this case, no relevant documents, and no employees with knowledge relevant to this case (*see* Story Dec. ¶12) – does not help Tomita on this motion. *See Frame v. Whole Foods Mkt., Inc.*, No. 06 Civ. 7058 (DAB), 2007 WL 2815613, at *5 (S.D.N.Y. Sept. 24, 2007) (granting transfer of copyright infringement action against supermarket chain to Texas where the allegedly infringing conduct occurred "everywhere Defendant operates supermarkets, not just in New York," despite the existence of five New York supermarkets). Nor does the existence of NOA's office in New York, which has no employees with knowledge relevant to this case. *See* Story Dec. ¶9.

Moreover, neither NCL nor NOA is incorporated in New York, and the design and development of the Nintendo 3DS have no connection to New York. *See* Hibino Dec. ¶¶3, 5, 7; Story Dec. ¶3.

The only party with any connection to New York is Tomita-US, which is merely the alleged exclusive licensee of the '664 patent. *See* Complaint ¶9. The timeline – (1) release of the Nintendo 3DS in the United States on March 27, 2011 (*see* Story Dec. ¶10); (2) incorporation of Tomita-US in New York with an Upper East side apartment address on April 21, 2011 (*see* Blank Dec. Ex. 1), and (3) the filing of this lawsuit in the Southern District of New York on June

22, 2011 – strongly suggests that Tomita-US was incorporated in New York as vehicle to manufacture the appearance that venue is convenient in this District.  Moreover, it does not appear that Tomita-US has any employees or ongoing business operations in this District.  In these circumstances, little weight should be given to Tomita-US's presence in the Southern District of New York.  *Cf. In re Microsoft Corp.,* 630 F.3d 1361, 1365 (Fed. Cir. 2011) (applying Fifth Circuit law; issuing writ of mandamus directing transfer of patent case from the Eastern District of Texas, finding that plaintiff's incorporation in the Eastern District of Texas shortly before filing suit "is no more meaningful, and no less in anticipation of litigation, than the others we reject"); *In re Zimmer Holdings, Inc.*, 609 F.3d 1378, 1381 (Fed. Cir. 2010) (applying Fifth Circuit law; issuing writ of mandamus directing transfer of patent case from the Eastern District of Texas, finding plaintiff's establishment of a principal place of business in that district "appears to be recent, ephemeral, and an artifact of litigation").

      f.        The Availability of Process to Compel the Attendance of Unwilling Witnesses Does Not Weigh in Favor of Transfer.

Nintendo is unaware of any non-party witnesses who reside within the subpoena power of this Court.  Thus, this factor does not weigh in favor of transfer.

      g.        Tomita Has the Means to Litigate in Washington.

Tomita is represented by a large, national law firm with offices in New York City, Los Angeles, and Miami.  Two partners and one associate are listed as Tomita's attorneys on the Complaint.  The bringing of this lawsuit in this District (specifically, Manhattan) – which is farther away from Mr. Tomita's home in Tokyo than Seattle and a more expensive city than Seattle – further confirms that Tomita's means are a non-issue.  Thus, this factor does not weigh in Tomita's favor.

        h.        The Western District of Washington Has Experience Handling Patent Lawsuits.

Similar to the Southern District of New York, the Western District of Washington has an active patent docket, and as a result of handling many patent cases over the years, is equally well-equipped to accommodate patent infringement cases. *See, e.g., Guan Gao Co., Ltd. v. Acco Brands Corp.,* No. 06 Civ. 8208 (JSR), 2007 WL 747795, at *4 (S.D.N.Y. March 9, 2007) (forums' respective familiarity with governing law is of no significance because both courts are equally capable of hearing patent action grounded in federal law); *McCain v. Rahal Letterman Racing, LLC*, No. 07 Civ. 5729 (JSR), 2007 WL 2435170, at *4 (S.D.N.Y. Aug. 27, 2007) (forums' respective familiarity with governing law of is of no significance because both courts are equally capable of hearing copyright action grounded in federal law). Accordingly, this factor is neutral.

        i.        The Western District of Washington Will Efficiently Manage and Adjudicate This Case.

Trial efficiency is also a neutral factor for several reasons. There has not been any discovery or any other substantial proceedings in this case. The Patent Local Rules in the Western District of Washington assure that this case will reach a fair, efficient and timely resolution. *See* http://www.wawd.uscourts.gov/referencematerials/localrules.htm. And while it is true that Your Honor usually places cases on track that will bring them to trial in six months or so, "variations in individual judges' practices doubtless exist" in the Western District of Washington as well. *See Serconet*, 2006 WL 2109462, at *2.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that this action be transferred to the Western District of Washington.

Dated: August 11, 2011
       New York, New York       Respectfully submitted,

                                      KAYE SCHOLER LLP

                                By:  /s/ James S. Blank
                                        James S. Blank
                                        Scott G. Lindvall
                                        Stephen J. Elliott
                                425 Park Avenue
                                New York, New York 10022
                                Tel: (212) 836-8000
                                Fax: (212) 836-8629

                                *Attorneys for Defendants*