UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x
:
TOMITA TECHNOLOGIES USA, LLC, AND TOMITA
TECHNOLOGIES INTERNATIONAL, INC.,                           :

               Plaintiffs,
                                                              :

        v.                                                   Case No. 1:11-cv-04256-JSR
                                                             :       ECF Case
NINTENDO CO., LTD., AND
NINTENDO OF AMERICA INC.
                                                             :

               Defendants.
------------------------------------------------------------------------x


**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER**

NY 73525882

# Table of Contents

I.    BACKGROUND ................................................................................................................. 1
II.   ARGUMENT .................................................................................................................... 4
    A.   Legal Standard ...................................................................................................... 4
    B.   This Action Should Not Be Transferred. ............................................................... 5
        1.   The Locus of Operative Facts ................................................................... 5
        2.   Convenience of the Witnesses .................................................................. 7
        3.   The Location of Relevant Documents ...................................................... 9
        4.   The Convenience of the Parties .............................................................. 10
        5.   The Plaintiff's Choice of Forum .............................................................. 10
        6.   The Availability of Process to Compel the Attendance of Unwilling Witnesses . 12
        7.   The Relative Means of the Parties .......................................................... 12
        8.   The Forum's Familiarity with the Governing Law ................................. 12
        9.   Trial Efficiency and the Interests of Justice............................................ 12
III.  CONCLUSION................................................................................................................ 12

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Albert Fadem Trust v. Duke Energy Corp.*,
   214 F. Supp. 2d 341 (S.D.N.Y. 2002)..............................................................................10, 11

*Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*,
   11 F. Supp. 2d 729 (S.D.N.Y. 1998)..................................................................................7, n.1

*Arce v. City of New York*,
   No. 08 Civ. 3871 (JSR), 2008 WL 2774447 (S.D.N.Y. July 16, 2008) ..................................11

*Caville v. Malibu Toys, Inc.*,
   No. 03 Civ. 9727 (SAS), 2004 WL 1516799 (S.D.N.Y. July 7, 2004) ..............................6, 10

*Colida v. Panasonic Corp. of North Am.*,
   No. 05 Civ. 5791 (JSR), 2005 WL 3046298 (S.D.N.Y. Nov. 10, 2005) ...........................7, n.1

*Dornoch Ltd. v. PBM Holdings, Inc.*,
   666 F. Supp. 2d 366 (S.D.N.Y. 2009).......................................................................................5

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*,
   -- F. Supp. 2d ---, Civ. No. 10-1067, 2011 WL 2490645 (LPS) (D.Del. June 22, 2011) ..........9

*Lorillard Tobacco Co. v. Perry & Turner Trucking Co.*,
   No. 98 Civ. 4781 (JSR), 1998 WL 696005 (S.D.N.Y. Oct. 7, 1998) .......................................8

*Maple Trade Fin., Inc. v. Lansing Trade Group LLC*,
   No. 09 Civ. 7457 (JSR), 2010 WL 99392 (S.D.N.Y. Jan. 6, 2010)...........................................5

*Medien Patent Verwaltung AG v. Warner Bros. Entm't, Inc.*,
   749 F. Supp. 2d 188 (S.D.N.Y. 2010)...................................................................................5, 8

*Millenium, L.P. v. Hyland Software, Inc.*,
   No. 03 Civ. 3900 (DC), 2003 WL 22928644 (S.D.N.Y. Dec. 10, 2003) ..........................7, n.1

*Serconet, Ltd. v. Netgear, Inc.*,
   No. 06 Civ. 5026 (JSR), 2006 WL 2109462 (S.D.N.Y. July 27, 2006) ............................6, n.1

*Student Advantage, Inc. v. Collegeclub.com*,
   No. 99 Civ. 8604 (JSR), 1999 WL 1095601 (S.D.N.Y. Dec. 3, 1999).................................4, 9

Plaintiffs Tomita Technologies USA, LLC ("TTUSA") and Tomita Technologies International, Inc. ("TTI") (collectively, "Tomita Technologies") hereby oppose the motion of Defendants Nintendo Co., Ltd ("NCL") and Nintendo of America, Inc. ("NOA") (collectively, "Nintendo") to transfer this action to the Western District of Washington (D.I. 16).

Contrary to Nintendo's assertion, TTUSA was not formed and located in the Southern District of New York to establish jurisdiction here for the purpose of filing this action. Instead, it was formed here because this is where Clifford David, a member and operating manager of TTUSA, resides. Mr. David is a long-time friend and business partner of Seijiro Tomita, the inventor of the patent at issue in this case (U.S. Patent No. 7,417,664 ("the '664 patent")) and the CEO of TTI. Several years ago, Mr. Tomita suffered a stroke and, since then, has relied on the assistance of others, including Mr. David, in advancing his business interests and commercializing his ideas. It would be a great burden to Mr. Tomita if this case were to be transferred to Washington.

In addition, Nintendo has significant ties to this district that are relevant to this case, including (i) employees located in this district that are responsible for developing and supporting the website for the Nintendo 3DS, the product accused of infringement in this action, (ii) employees located in this district, including the Director of Entertainment and Trend Marketing, involved in the launch and promotion of the Nintendo 3DS, (iii) Nintendo's flagship store, Nintendo World, located in Rockefeller Center, and (iv) promotional events for the 3DS occurring in this district. Tomita Technologies respectfully submits that Nintendo has not come close to meeting the high burden required to disturb Tomita Technologies' choice of forum.

I.   BACKGROUND

This case concerns stereoscopic 3D technology invented by Mr. Seijiro Tomita and patented in the '664 patent. Mr. Tomita is the inventor or co-inventor of over 100 patents

applications worldwide in 3D technology.  Over 70 patents have issued from those applications. (Declaration of Seijiro Tomita ("Tomita Decl."), Tomita Decl., ¶2).

Prior to inventing the technology covered by the '664 patent, Mr. Tomita worked at Sony for nearly 30 years as a scientist and manager—starting there in 1974.  (*Id.*, ¶3).  Over the course of his career at Sony, Mr. Tomita developed technological advances in electronic cameras, video displays, amusement rides, video games, optical disks, audio technology, dye sublimation printing, thrill ride imaging, image transmission over phone and digital lines and broadcast systems.  (*Id.*, ¶4).  In 1980, Mr. Tomita became the head of Sony China, opening and developing the Chinese market for Sony.  Under his guidance, there were times when Sony China outsold Sony Japan and Sony USA.  (*Id.*, ¶5).  In 1985, he was appointed the director of Sony America's New Jersey-based division of Electronic Photography and Publishing.  There he supervised over sixty employees and was responsible for developing digital cameras and printers for electronic imaging and publishing.  He also started and ran Sony's Medical Division for the United States, which used printer technology that he co-invented.  (*Id.*, ¶7).

In 1989, technology developed by Mr. Tomita and his team was used by CNN, ABC and USA Today to transmit images of the events that unfolded in China as tanks rolled into Tiananmen Square.  (*Id.*, ¶8).  His team assisted broadcasters in using that technology.  (*Id.*, ¶9). Mr. Tomita and his team later received a Technology and Engineering Emmy® Award for News Broadcasting for that work, which Mr. Tomita was chosen to accept for Sony.  (*Id.*, ¶10).  In 1993, Mr. Tomita moved to Sony Headquarters in Japan and was appointed General Manager for Future Sony Business Development, reporting directly to Sony's Chief Executive Officer.  He remained in that position until his retirement from Sony in 2002.  (*Id.*, ¶¶11-12).

In 2002, Mr. Tomita decided to leave Sony to pursue his own technological interests. He initially focused on medical device technology and on using his extensive knowledge of cameras, optics, lighting, and stereoscopy to improve the state of 3D technology. (*Id.*, ¶¶13-14). Since 2002, Mr. Tomita has invented or co-invented over 100 patents on 3D technology and has many pending patent applications on that technology. (*Id.*, ¶17).

In 2003, he filed PCT Application No. PCT/JP03/03405, which later issued in the U.S. as the '664 patent. Patents relating to the technology of the '664 patent have been licensed by several companies in Japan and he has received substantial offers to purchase that technology. (*Id.*, ¶¶19-20).

In addition, Mr. Tomita has presented the 3D technology described and claimed in the '664 patent to representatives of large companies, including defendant Nintendo, Microsoft, JVC, Toyota, Panasonic, and Hitachi. (*Id.*, ¶¶18, 22). With respect to Nintendo, on August 20, 2003, Mr. Tomita personally met with seven research level engineers and managers from Nintendo's Research and Development department and demonstrated a prototype of his technology. At that meeting, Nintendo employees stated that they believed that 3D technology is the future of the gaming industry. (*Id.*, ¶23). Mr. Tomita is advised that, about eighteen months ago, Nintendo was again shown a prototype of Mr. Tomita's technology—this time by KFE Japan Co., Ltd., a licensee of Mr. Tomita's 3D technology. (*Id.*, ¶24).

Mr. Tomita has also worked closely with world-renowned neurosurgeon Takanori Fukushima, M.D., D.M.Sc., donating his technology, time and personnel to film hundreds of hours of brain surgery in 3D for use in developing a system to improve the surgical monitoring process as well as for teaching Dr. Fukushima's unique keyhole brain surgery. The technology of the '664 patent has been used in that work. (*Id.*, ¶21).

3

Several years ago, Mr. Tomita suffered a stroke that severely affected his stamina and mobility, but fortunately left his mental faculties intact. As a result, Mr. Tomita has come to rely on others for assistance in advancing his business interests and commercializing his ideas. (*Id.*, ¶¶25-26).

In order to promote his technologies in the United States, Mr. Tomita teamed up with his long-time friend and business partner Mr. Clifford David. Mr. Tomita has known Mr. David for more than 20 years, and they have worked together on numerous projects. (*Id.*, ¶¶27-28). Mr. David resides in New York City. Together they formed co-plaintiff TTUSA in New York to license and develop in the U.S. Mr. Tomita's technology relating to 3D stereoscopy. (*Id.*, ¶29). Mr. David is the Manager of TTUSA and, in that capacity, advises and assists Mr. Tomita in business matters pertaining to the patent at issue in this action and other intellectual property. (*Id.*, ¶¶30-31). Mr. Tomita expects to rely on Mr. David's assistance in matters related to this lawsuit, including at depositions and trial. (*Id.*, ¶32).

## II.   ARGUMENT

### A.   Legal Standard

"The burden of demonstrating the desirability of transfer lies with the moving party, and in considering a motion for transfer, ***a court should not disturb a plaintiff's choice of forum*** unless the defendant makes … ***a clear and convincing*** showing that the balance of convenience favors the defendant's choice." *Student Advantage, Inc. v. Collegeclub.com*, No. 99 Civ. 8604 (JSR), 1999 WL 1095601, at *3 (S.D.N.Y. Dec. 3, 1999) (emphasis added) (internal quotations and citations omitted). Factors that a court considers in determining whether transfer is warranted include

> (1) the plaintiff's choice of forum,
>
> (2) convenience of the witnesses,

4

> (3) the location of relevant documents and relative ease of access to sources of proof,
>
> (4) the convenience of the parties,
>
> (5) the locus of operative facts,
>
> (6) the availability of process to compel the attendance of unwilling witnesses,
>
> (7) the relative means of the parties,
>
> (8) the forum's familiarity with the governing law, and
>
> (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Dornoch Ltd. v. PBM Holdings, Inc.*, 666 F. Supp. 2d 366, 372 (S.D.N.Y. 2009).  These factors need not be accorded the same weight.  *Maple Trade Fin., Inc. v. Lansing Trade Group LLC*, No. 09 Civ. 7457 (JSR), 2010 WL 99392, at *1 (S.D.N.Y. Jan. 6, 2010).

### B. This Action Should Not Be Transferred.

The nine factors identified above either favor denying transfer or are neutral.  They do not warrant disturbing Tomita Technologies' choice of forum.  For the convenience of the Court, these factors are addressed in the same order they appear in Nintendo's Memorandum of Law in Support of Nintendo's Motion to Transfer (D.I. 16) ("Nintendo's Brief").

#### 1. The Locus of Operative Facts

The "locus of operative facts" in patent infringement cases includes "facts relating to the design, development, and production of a patented product." *Medien Patent Verwaltung AG v. Warner Bros. Entm't, Inc.*, 749 F. Supp. 2d 188, 191-92 (S.D.N.Y. 2010).  As Nintendo acknowledges, the Nintendo products accused of infringement in this action were designed and developed in Japan. (Nintendo's Brief at 6).  Nintendo does not state where those products were produced, but it is reasonable to infer that they were produced overseas—or at least not in the

5

Western District of Washington. Accordingly, the locus of operative facts in this case would be Japan, not the Western District of Washington.

Nintendo argues that "key sales and marketing decisions related to the sale of Nintendo 3DS" occurs at NOA's headquarters in Redmond, Washington. (Nintendo's Brief at 6). However, Nintendo also engages in substantial marketing and promotional activities in the Southern District of New York. As Nintendo acknowledges, Nintendo's employees responsible for Nintendo's consumer-facing websites, including Nintendo.com and Nintdendo3DS.com (the website specifically for the 3DS), work in Nintendo's New York City office. (*Id.* at 10, n.2). In addition, Nintendo's employees responsible for entertainment and trend marketing are located in Nintendo's New York City office, including Amber McCollom, Nintendo's Director of Entertainment and Trend Marketing. (*Id.*; Declaration of Kenneth L. Stein ("Stein Decl."), Ex. 1). In a recent, interview, Ms. McCollom described her extensive work on the Nintendo 3DS launch. (*See* Stein Decl., Ex. 2). Also, Nintendo has held promotional events for the 3DS in New York City. (*See id.*, Exs. 3, 4, 6). And Nintendo's flagship store—Nintendo World—is located in New York City. (*See id.*, Ex. 5). Accordingly, the location of Nintendo's marketing and promotional activities for the 3DS are at most a neutral consideration. *See, e.g., Caville v. Malibu Toys, Inc.*, No. 03 Civ. 9727 (SAS), 2004 WL 1516799, at *3 (S.D.N.Y. July 7, 2004) (holding that the situs of operative facts was not indisputably in the transferee forum because "while it is likely true that Malibu markets its product in California, Malibu also does so in many other markets").[1]

---

[1] The cases cited by Nintendo regarding this factor are distinguishable from the present case because in those cases the design, development or manufacture of the allegedly infringing product occurred in the transferee forum. *See Serconet, Ltd. v. Netgear, Inc.*, No. 06 Civ. 5026 (JSR), 2006 WL 2109462, at *1 (S.D.N.Y. July 27, 2006) ("the Northern District of California is the locus of many of the operative facts because Netgear manages the development of the

### 2. Convenience of the Witnesses

Nintendo identifies seven potential witnesses, including Mr. Tomita, and asserts that the Western District of Washington is more convenient for each of them. (Nintendo's Brief at 7-9). Only two of those witnesses, however, actually reside in Washington and, as explained below, one those two is unlikely to be a witness at trial. The other five witnesses identified by Nintendo reside in Japan. *Id.* Notably, Nintendo fails to mention that Mr. David, a member and manager of TTUSA, will likely be a witness and resides in New York City. (*See* Tomita Decl., ¶¶29-32). In particular, Mr. David has knowledge regarding the formation of TTUSA and its license agreement with TTI. In addition, while Nintendo asserts that "[n]one of [its] witnesses reside in New York" (Nintendo's Brief at 7), Nintendo has numerous employees in New York City who, as explained above, are directly involved in the marketing and promotion of the 3DS. (*See* Nintendo's Brief at 10, n.2.; Stein Decl., Exs. 1, 2). Those employees have knowledge relevant to this case relating to at least the marketing and promotion of the 3DS and may be witnesses at trial.

With respect to Mr. Tomita, the Southern District of New York is by far the more convenient forum—otherwise, both he and Mr. David, who will be assisting Mr. Tomita due to his physical impairments, will need to travel to a distant district whenever Mr. Tomita must

---

allegedly infringing devices from its home base in Santa Clara"); *Fuji Photo Film,* 415 F. Supp. 2d at 375 ("The allegedly infringing products were designed, developed and produced by Lexar in the Northern District of California."); *Colida v. Panasonic Corp. of North Am.*, No. 05 Civ. 5791 (JSR), 2005 WL 3046298, at *2 (S.D.N.Y. Nov. 10, 2005) ("The facts underlying this dispute occurred predominantly in New Jersey, as well as in Japan, where [the allegedly infringing product] was designed, and in Indonesia and Malysia, where the [the allegedly infringing product] was manufactured."); *Millenium, L.P. v. Hyland Software, Inc.*, No. 03 Civ. 3900 (DC), 2003 WL 22928644, at *1 (S.D.N.Y. Dec. 10, 2003) ("[Defendant's] products are designed, developed and manufactured exclusively at the headquarters."); *Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, 11 F. Supp. 2d 729, 730 (S.D.N.Y. 1998) ("The allegedly infringing device was developed at [Defendant's] Division within [the Northern District of California], and the resultant product line is manufactured there.").

7

appear in Court.  The marginal decrease in flight time for Mr. Tomita does not outweigh the inconvenience of having both Messrs. Tomita and David travel.  Nintendo simply seeks to shift any inconvenience from Nintendo to Tomita Technologies, which is not a proper basis for transfer.  *Lorillard Tobacco Co. v. Perry & Turner Trucking Co.*, No. 98 Civ. 4781 (JSR), 1998 WL 696005, at *2 (S.D.N.Y. Oct. 7, 1998) ("In these circumstances, Perry's claims of inconvenience are, at most, simply an attempt to shift the inconvenience from one party to the other, an inappropriate basis for transfer.") (internal citations and quotation marks omitted).

As to Nintendo's two witnesses located in the Western District of Washington, one of them is NOA's Corporate Controller—who is unlikely to actually be a witness at trial. (Nintendo's Brief at 7 (discussing Nintendo's Corporate Controller, Rod Teuber)).  While he may be deposed, typically financial information in a patent case is introduced through expert testimony on damages.  That leaves a single witness for Nintendo in the Western District of Washington.

As to Nintendo's four witnesses in Japan, the difference in travel time is marginal—taking the fastest routes identified by Nintendo, 11 hours versus 14.5 hours (a difference of only 3.5 hours).  (*Id.* at 8).  In addition, those witnesses appear to be duplicative since Nintendo's description of their relevant knowledge is identical for each—"responsible for the design and development of the Nintendo 3DS's cameras" and "has knowledge about the design and development of the Nintendo 3DS's cameras."  (*Id.* at 7-8).  It is unlikely that Nintendo will actually need four witnesses testifying on the same topic.

Notably, all of Nintendo's witnesses are employees, and thus their convenience is not entitled to great weight.  *See, e.g., Medien Patent*, 749 F. Supp. 2d at 191 ("Employees of the parties will, as a practical matter, be available in any venue by virtue of the employment

8

relationship. Furthermore, the movants are not likely to suffer any unusual expense or inconvenience in transporting their own employees [from California] to New York City.") (internal citations and quotation marks omitted); *Student Advantage*, 1999 WL 1095601, at *4 ("While some of defendant's employees and/or former employees may ultimately have to travel to New York to testify, neither this nor the modest inconvenience of transporting documents to New York overcomes the presumption in favor of plaintiff's choice of forum in a case that has been shown to have significant New York and/or East Coast-based ties."); *see also Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd.*, -- F. Supp. 2d ---, Civ. No. 10-1067, 2011 WL 2490645, at *9 (LPS) (D. Del. June 22, 2011) (according no weight to any purported inconveniences of party witnesses).

This factor, accordingly, slightly favors denial of transfer or, at most, is neutral.

### 3. The Location of Relevant Documents

Nintendo argues that the location of relevant documents favors transferring the case to the Western District of Washington, citing technical documents located in Japan and marketing, sales and financial documents located in Washington. (Nintendo's Brief at 9-10).

With respect to the documents in Japan, it is no less convenient to send those documents to New York than it is to send them to Washington. With respect to the documents in Washington, those documents will likely be produced out of the offices of Nintendo's attorneys—who are located in New York.

In any event, the location of documents is not a significant factor. *See TouchTunes*, 676 F. Supp. 2d at 176 ("in today's era of photocopying, fax machines, and Federal Express, the location of the documents ***is not a significant factor*** in the convenience analysis") (emphasis added) (quotation marks omitted).

9

Also, Ms. Story, Nintendo's Executive Vice President of Business for NOA, acknowledges in her declaration that Nintendo, in fact, has relevant documents in New York City, presumably at Nintendo's New York office.  (Story Decl., ¶8).

### 4. The Convenience of the Parties

Nintendo asserts that the Western District of Washington is a more convenient venue for both parties. To the contrary, TTUSA and TTI are small companies and transferring the case to Washington will then require both principals—Mr. Tomita and Mr. David—to travel for trial and possibly other court appearances.  Nintendo simply attempts to shift the burden of travel from it to Tomita Technologies.

Notably, as described above, Nintendo has significant business operations in New York City—including a New York Office that handles Nintendo's website for the 3DS and is involved in the marketing and promotion of the 3DS. (Nintendo's Brief at 10, n.2).  In addition, Nintendo has its sole retail store in the U.S. in New York City and has held promotional events for the 3DS in New York City. (Stein Decl., Exs. 3, 4, 6).  Accordingly, Nintendo could reasonably foresee that it may be required to defend a suit in this district. *Caville*, 2004 WL 1516799, at *3 (rejecting defendants claim that the Southern District of New York was inconvenient where defendant had "chosen to exhibit and sell its product in New York, which makes suit in this district reasonably foreseeable").

This factor weighs against transfer.

### 5. The Plaintiff's Choice of Forum

"[C]ourts have typically accorded *substantial weight to … plaintiff's choice of forum*, for that very choice reflects one side's assessment of the balance of relevant factors, and since the law permits the suit to be brought where plaintiff has chosen to bring it, that choice should not be lightly overridden." *Albert Fadem Trust v. Duke Energy Corp.*, 214 F. Supp. 2d 341, 343

10

(S.D.N.Y. 2002) (emphasis added).  "[U]nless the balance is strongly in favor of the defendant, *the plaintiff's choice of forum should rarely be disturbed*."  *Arce v. City of New York*, No. 08 Civ. 3871 (JSR), 2008 WL 2774447, *1 (S.D.N.Y. July 16, 2008) (emphasis added) (quotation marks and citations omitted).

Nintendo argues that Tomita Technologies' choice of forum should be accorded little weight, accusing Tomita Technologies of incorporating TTUSA in New York as a "vehicle to manufacture the appearance that venue is convenient in this District."  (Nintendo's Brief at 13).  That is simply untrue.  The reason TTUSA incorporated in New York and is located in New York City is because that is where Mr. David resides.  As explained above, Mr. David is a long-time friend and business partner of Mr. Tomita and Mr. Tomita now relies upon him for assistance in view of his physical impairments and to advance his business interest.  (*See* Tomita Decl., ¶¶29-32).  There was nothing nefarious or calculated about incorporating TTUSA in New York, as Nintendo suggests.

In addition, contrary to Nintendo's assertion, this is not a case where the connection between Tomita Technologies' claims and the Southern District of New York is "tenuous" or "nonexistent."  (*See* Nintendo's Brief at 11).  To the contrary, TTUSA is located in New York City and its purpose is to license and develop in the U.S. Mr. Tomita's technology relating to 3D stereoscopy.  (*See* Tomita Decl., ¶¶29-32).  In addition, as explained above, Nintendo has significant business operations in New York City that relate directly to the subject matter of this lawsuit—including a New York office and its Nintendo World store, as well as marketing and promotional activities.  (*See* Stein Decl., Exs. 1-6).

Also, the fact that TTI is located in Japan does not disturb the substantial weight given Tomita Technologies' choice of forum.  *TouchTunes Music*, 676 F.Supp.2d at 173 ("Even where

11

a plaintiff is not a resident of its chosen forum, a plaintiff's choice of forum is entitled to substantial weight where the balance of factors does not warrant a transfer.").

This factor strongly favors denying transfer.

### 6. The Availability of Process to Compel the Attendance of Unwilling Witnesses

This factor is neutral. Neither Nintendo nor Tomita Technologies has identified at this point any non-party witnesses that reside beyond the subpoena power of this Court.

### 7. The Relative Means of the Parties

This factor favors denying transfer. TTI and TTUSA are small businesses. Nintendo, in contrast, is a large, international company which has far greater resources available for this litigation.

### 8. The Forum's Familiarity with the Governing Law

As Nintendo acknowledges, both the Southern District of New York and the Western District of Washington are experienced in handling patent infringement cases. (Nintendo's Brief at 14). This factor is therefore neutral.

### 9. Trial Efficiency and the Interests of Justice.

This factor slightly favors denying transfer because discovery is already under way in this case under the Local Rules of the Southern District of New York.

## III. CONCLUSION

In view of the foregoing, Nintendo has not come close to meeting the high burden required to disturb Tomita Technologies' choice of forum. Tomita Technologies respectfully requests that Nintendo's motion to transfer be denied.

Dated: August 25, 2011

          STROOCK & STROOCK & LAVAN LLP

          By: /s/  *Kenneth L. Stein*
              Joseph Diamante
              Kenneth L. Stein
              Alexander Solo
              180 Maiden Lane
              New York, NY 10038
              (212) 806-5400
              jdiamante@stroock.com

*Attorney for Plaintiffs Tomita Technologies USA, LLC, and Tomita Technologies International, Inc*

13

NY 73525882

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------x
:
TOMITA TECHNOLOGIES USA, LLC, AND TOMITA
TECHNOLOGIES INTERNATIONAL, INC.,                                        :

                 Plaintiffs,
:
       v.                                     Case No. 1:11-cv-04256-JSR

NINTENDO CO., LTD.,  AND                                                 :
NINTENDO OF AMERICA INC.
:

                Defendants.
-------------------------------------------------------------------------x

## CERTIFICATE OF SERVICE

      I hereby certify that on August 25, 2011, I caused a true and correct copy of the foregoing Plaintiffs' Opposition to Defendants' Motion to Transfer, Declaration of Seijiro Tomita, Declaration of Kenneth L. Stein, and exhibits in support thereof to be served via ECF in accordance with the Federal Rules of Civil Procedure, and/or the Local Rules of this Court, upon the following parties and participants, via email:

        **James S. Blank, Esq.**
        **Scott G. Lindvall, Esq.**
        **Stephen J. Elliott, Esq.**
        Kaye Scholer LLP
        425 Park Avenue
        New York, New York 10022
        Tel: (212) 836-8000
        Fax: (212) 836-8629

                                          /s/  *Kenneth L. Stein*
                                              Kenneth L. Stein

NY 73525882