**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TOMITA TECHNOLOGIES USA, LLC, and TOMITA TECHNOLOGIES INTERNATIONAL, INC.,<br><br>                              Plaintiffs,<br><br>          v.<br><br>NINTENDO CO., LTD. and NINTENDO OF AMERICA INC.,<br><br>                              Defendants. | 11 Civ. 04256 (JSR)<br>ECF Case |

**REPLY MEMORANDUM OF LAW IN**
**SUPPORT OF DEFENDANTS' MOTION TO TRANSFER**

60325649

## **TABLE OF CONTENTS**

                                                                                                               **Page**

I.    INTRODUCTION ..................................................................................................... 1

II.   ARGUMENT .......................................................................................................... 2

        A.    Little Weight Should be Given to Tomita's Choice of Forum ............................. 2

        B.    The Locus of Operative Facts Is Nintendo's Headquarters in Redmond, Washington and Kyoto, Japan ............................................................................ 5

        C.    The Western District of Washington is the Most Convenient Forum for the Witnesses ............................................................................................................ 5

        D.    The Western District of Washington is a More Convenient Forum for the Parties ................................................................................................................. 8

        E.    The Relevant Documents are Located in the Western District of Washington and Japan ......................................................................................... 9

        F.    Tomita Has the Means to Litigate in Washington ............................................. 10

        G.    Trial Efficiency and the Interests of Justice ...................................................... 10

III.  CONCLUSION ..................................................................................................... 10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Amerisham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*,
   11 F. Supp. 2d 729 (S.D.N.Y. 1998) ................................................................................6

*Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*,
   415 F. Supp. 2d 370 (S.D.N.Y. 2006) ..............................................................................10

*Morrow v. Microsoft Corp.*,
   499 F.3d 1332 (Fed. Cir. 2007) ..........................................................................................2

*Berman v. Informix Corp.*,
   30 F. Supp. 2d 653 (S.D.N.Y. 1998) ................................................................................10

**STATUTES**

28 U.S.C. § 1404(a) ...........................................................................................................6

Fed. R. Evid. 615 ...............................................................................................................8

I.  **INTRODUCTION**

Tomita's primary basis for its opposition to this motion is that deference should be afforded to it because Tomita-US was incorporated in New York and is located in an apartment in Manhattan. This argument ignores the fact that Tomita-Japan, the owner of the '664 patent and the real party in interest, is a Japanese corporation based in Tokyo that has no connection to this District. Tomita-US, which was incorporated only two months before this lawsuit was filed, is merely the alleged exclusive licensee of the '664 patent. Other than the filing of this lawsuit, there is no record evidence that Tomita-US has engaged in any business activities or has any employees in this District or elsewhere.

Tomita also relies heavily on Nintendo's alleged "significant ties" to the Southern District of New York. The "ties" that Tomita points to – two promotional events; a small office here; and the Nintendo World store – have little, if anything, to do with the issues in this case. Here, the design and development of the Nintendo 3DS and decision-making regarding the Nintendo 3DS's marketing and sales are the key issues on which the witnesses will testify. These activities primarily occurred at NCL's and NOA's headquarters in Kyoto, Japan and Redmond, Washington, respectively. None took place in New York.

Tomita completely ignores the evidence showing that the Western District of Washington is far more convenient than this District for the witnesses and the parties. Notably, all but one of the witnesses identified thus far (by either side) work and reside in the Western District of Washington, Japan or Northern California. This includes three NOA employees, eleven NCL employees (seven of whom are identified by Tomita), and Tomita's primary witness, Mr. Tomita.

In sum, the factors considered by a court on a motion to transfer, taken together, weigh in favor of granting this motion. Little deference should be given to Tomita's choice of forum, as

this case has no material connection to the Southern District of New York. The factors of witness convenience, party convenience, locus of operative facts, and location of documents all weigh in favor of transfer. The remaining factors are neutral and thus do not weigh against transfer. Accordingly, this case should be transferred to the Western District of Washington.

## II. ARGUMENT

Tomita does not contest that it could have brought this action in the Western District of Washington. Of the nine factors considered on transfer motions, Tomita does not challenge Nintendo's assessment of two of them; Tomita agrees that "the availability of process to compel the attendance of unwilling witnesses" and "the forum's familiarity with the governing law" factors are neutral and thus do not weigh against transfer. *See* Plaintiffs' Opposition to Defendants' Motion to Transfer (D.I. 21) ("Opp.") at 12. The remaining seven factors are addressed below.

### A. Little Weight Should be Given to Tomita's Choice of Forum

#### 1. Tomita-Japan Has No Connection to the Southern District of New York

Tomita-Japan is the alleged owner of the '664 patent. It is a Japanese corporation with a principal place of business in Tokyo, Japan. It has no business operations or employees in this District. Tomita has offered nothing to challenge the conclusion that Tomita-Japan has no connection to this District.[1]

#### 2. Tomita-US's Connection to the Southern District of New York

Tomita's opposition also provides no evidence to counter the conclusion that Tomita-US was incorporated under New York law and provided with an apartment address on the Upper

---

[1] As the alleged owner of the '664 patent, Tomita-Japan has standing to bring this lawsuit by itself, without Tomita-US, which is not an indispensible party to this litigation. *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340-41 (Fed. Cir. 2007).

East Side for service of process purposes in April of this year solely in order to suggest that venue is convenient in the Southern District of New York.

Tomita asserts only that "the reason [Tomita-US] incorporated in New York and is located in New York City is because that is where Mr. David resides."[2] Opp. at 11. But the record evidence does not support this assertion, and Mr. Tomita's declaration is completely silent on the "reason" why Tomita-US was incorporated in New York and "located" in New York City. Mr. David himself submitted no declaration at all on this or any other issue.[3]

Moreover, other than filing this litigation, there is no evidence that Tomita-US has any employees or has engaged in any activity in furtherance of its stated purpose (licensing and developing Mr. Tomita's technology and intellectual property (*see* Declaration of Seijiro Tomita (D.I. 24) ("Tomita Dec.") ¶ 29)) in this District. All of the technology development and commercial activity described in Mr. Tomita's declaration predates Tomita-US's incorporation.

---

[2]  There is no record evidence that Mr. David resides in New York City or, if he does, what the extent of his residency is here. To the contrary, the record evidence indicates that Mr. David resides in Windermere, Florida on a full or part time basis. For example, Mr. David's patents and patent application identify Windermere, Florida as his residence. *See* Supplemental Declaration of James S. Blank ("Supp. Blank Dec."), Exs. 1-3. Further, the sworn declarations that Mr. David submitted to the United States Patent and Trademark Office in connection with his patent applications affirm that his "residence" is 12456 Park Avenue, Windermere, Florida 34786. *See id.*, Exs. 4-6. In addition, documentation on file with the Florida Department of State relating to four businesses Mr. David owns identifies his address as Windermere or Orlando, Florida. *See id.*, Exs. 7-10; *see also* Declaration of James S. Blank (D.I. 17), Ex. 3.

[3]  Tomita's assertion that Tomita-US was incorporated and located in New York for the convenience of Mr. David is also belied by the places of incorporation and locations of Mr. David's other businesses as listed in the records of the Florida Department of State. All are incorporated in either Florida or Connecticut and located in Orlando, Florida. *See* Supp. Blank Dec., Exs. 7-10.

### 3. NOA's Alleged "Ties" to This District

The purported "significant business operations" on the part of Nintendo that Tomita contends are located in this District are entirely unconnected to Tomita's patent infringement claim. *See* Opp. at 11. In particular, Tomita relies on: (1) the Nintendo World store; (2) NOA's small office here; and (3) two promotional events held here. *See id.*

The Nintendo World store is immaterial to Tomita's claims because: (1) the accused Nintendo 3DS is sold on a nationwide basis at major retailers in all 50 states, and (2) the Nintendo World store does not have any relevant documents or employees with knowledge relevant to the case. *See* Memorandum of Law in Support of Defendants' Motion to Transfer (D.I. 16) ("Nintendo Br.") at 11-12 (citing cases). Tomita's opposition completely ignores these facts and the case law.

Tomita also relies on two promotional events relating to the Nintendo 3DS that occurred in New York City: (1) a launch event on March 26, 2011 at a Best Buy store in Union Square, and (2) a half hour press conference on March 27, 2011. *See* Declaration of Kenneth L. Stein (D.I. 23) ("Stein Dec."), Exs. 3, 4 and 6. As noted above, the Nintendo 3DS is sold and promoted on a nationwide basis and thus the occurrence of two promotional events in New York City is unremarkable.

NOA's office here employs approximately 35 people, the vast majority of whom are dedicated to website activities and remainder of whom are responsible for trend and entertainment marketing sales, and none of whom have any knowledge relevant to this case. *See* Story Dec. (D.I. 19) ¶9.[4] There is simply no connection between the activities of this specialized

---

[4] Tomita's claim that the activities of one of the New York office's employees, Amber McCollom (*see* Opp. at 6), are particularly important is belied by its failure to even identify her as a potential witness in its Initial Disclosures. *See* Supp. Blank Dec., Ex. 11.

marketing office and Tomita's patent infringement claims. Accordingly, little deference should be afforded to Tomita's choice of forum.

  B. The Locus of Operative Facts Is Nintendo's Headquarters in Redmond, Washington and Kyoto, Japan

Tomita does not, and cannot, argue that the locus of operative facts is New York or that this factor favors transfer. In fact, Tomita agrees that the locus of operative facts includes NOA's headquarters in Redmond, Washington and NCL's headquarters in Japan. *See* Opp. at 5-6. Tomita's sole argument with respect to this factor is that the "location of Nintendo's marketing and promotional activities are at most a neutral consideration" because some Nintendo 3DS promotional activities occurred in New York. *Id.* at 6. Tomita's argument misses the point. Irrespective of whether there have been promotional activities regarding the Nintendo 3DS in New York (in practice, such activities have taken place nationwide), the fact remains that NOA's Redmond, Washington headquarters is the strategic center of NOA's business, where decisions relating to its overall business are made, where key sales and marketing decisions relating to the sale of the Nintendo 3DS in the United States occur, and where information regarding the nationwide sales of the Nintendo 3DS is maintained and analyzed. *See* Nintendo Br. at 6; Story Dec. ¶¶5-7. Accordingly, this factor favors transfer.

  C. The Western District of Washington is the Most Convenient Forum for the Witnesses

    1. NOA Witnesses

Two of NOA's identified witnesses, Jacqualee Story and Rod Teuber, work at NOA's headquarters in Redmond, Washington. A third NOA witness, Nicolas Chavez, works at NOA's

office in Redwood, City, California.[5] The Western District of Washington is clearly more convenient for these witnesses as it would relieve the burden imposed by traveling to New York City, and therefore eliminate the need for them to be away from work and away from their families for an extended period of time. *See* Story Dec. ¶16.

Tomita completely ignores these key facts, and responds only that Mr. Teuber "is unlikely to actually be a witness at trial" since, according to Tomita, "typically financial information in a patent case is introduced through expert testimony on damages." Opp. at 8. But, it is not for Tomita to decide whom Nintendo's witnesses will be. Tomita is seeking broad categories of sales and financial documents from Nintendo, including documents relating to the Nintendo 3DS as well as documents concerning Nintendo's overall financial performance. *See* Supp. Blank Dec., Ex. 13 at 13-14. As NOA's Corporate Controller, Mr. Teuber will be Nintendo's witness to the facts relating to these matters.[6]

    2.    NCL Witnesses

With respect to the four NCL witnesses identified by Nintendo, in addition to the shorter travel distance and time, the Western District of Washington is more convenient because they would be able to work at NOA's headquarters in Redmond, Washington, resulting in

---

[5]    Mr. Chavez is NOA's Director of Consumer Marketing. He has knowledge of the sales and distribution of the Nintendo 3DS in North America. His office in Redwood City, California, is just a short shuttle flight to Seattle. *See* Supp. Blank Dec., Ex. 12 at 3.

[6]    Tomita's argument that because Nintendo's witnesses are employees, their "convenience is not entitled to great weight" (Opp. at 8) is incorrect. The statute governing this motion, 28 U.S.C. § 1404(a), expressly authorizes transfer "[f]*or the convenience of the parties and witnesses* [and] in the interests of justice." (emphasis added). *See* Nintendo Br. at 4; *Amerisham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, 11 F. Supp. 2d 729, 730 (S.D.N.Y. 1998) (the "'convenience of the witnesses' and 'location of relevant documents and relative ease of access to source of proof' loom large[] when deciding between fora separated by roughly 3000 miles").

significantly less disruption to NCL's business. *See* Hibino Dec. (D.I. 18) ¶14. Once again, Tomita simply ignores this point. Instead, Tomita speculates that NCL's witnesses "appear to be duplicitive..." Opp. at 8. Again, it is not for Tomita to decide whom Nintendo's witnesses will be.

Moreover, after the filing of this motion, Tomita itself identified seven NCL employees as potential witnesses in its Initial Disclosures. *See* Supp. Blank Dec., Ex. 11. These employees work at NCL's headquarters or plant in Kyoto, Japan. *See* Supp. Blank Dec. ¶13. The Western District of Washington is a more convenient forum for these seven witnesses for the same reasons that it is for the four NCL employee-witnesses identified thus far by Nintendo.[7]

### 3.  Tomita Witnesses

Tomita has identified one witness, Mr. Tomita, and one "likely" witness, Mr. David. *See* Opp. at 7. As for Mr. Tomita, Tomita makes the nonsensical argument that "the Southern District is by far the more convenient forum - otherwise, both he and Mr. David, who will be assisting Mr. Tomita due to his physical impairments, will need to travel to a distant district whenever Mr. Tomita must appear in Court." *Id.* at 7-8. This argument fails. First, Mr. Tomita resides in Tokyo and the Western District of Washington much closer to Tokyo than the Southern District of New York. Second, Mr. David's alleged inconvenience has nothing to do

---

[7] Tomita has yet to lay out its infringement theories in this case, but since the filing of this motion, Tomita has served document requests on Nintendo indicating that in addition to the Nintendo 3DS's cameras, Tomita is targeting the Nintendo 3DS's screen technology, technology for adjusting the Nintendo 3DS's 3D intensity, and technology relating to the Nintendo 3DS's altered reality software. *See* Supp. Blank Dec., Ex. 13 at 10-12. Thus, in addition to the four NCL witnesses who have been identified thus far to testify on the Nintendo 3DS's camera technology, Nintendo may also have to produce witnesses on some or all of these other technological aspects of the Nintendo 3DS. These witnesses will be NCL employees, who will be inconvenienced in the same way the other NCL witnesses will be if this case is venued here. *See* Hibino Dec. ¶¶5, 7 and 14.

with Mr. Tomita's alleged inconvenience. Finally, Tomita has not submitted any evidence that the Western District of Washington would be inconvenient for him. Mr. Tomita's declaration is silent on the issue.[8]

As for Mr. David, Tomita has not submitted any evidence that the Western District of Washington will be inconvenient for him. Mr. David did not submit a declaration on this issue, and the record evidence indicates that he resides in Florida. Moreover, the only topics Mr. David has knowledge of, according to Tomita, are the formation of Tomita-US, its license with Tomita-Japan, and its "business." Opp. at 7; Supp. Blank Dec., Ex. 11. These topics are not relevant to the key issues of infringement, invalidity and damages in this case.[9] Accordingly, the convenience of the witnesses factor favors transfer.

D.     The Western District of Washington is a More Convenient Forum for the Parties

Tomita does not challenge that the Western District of Washington is a more convenient forum for both NOA and NCL, as the hardship of travel and disruption to business would be eliminated for NOA, and significantly lessened for NCL there, where NOA's headquarters are located and where the vast majority of its employees work. *Compare* Nintendo Br. at 10 with Opp. at 10. Instead, Tomita rehashes its argument that Nintendo "has significant business

---

[8]   While Nintendo is certainly sympathetic to Mr. Tomita's health issues, it is difficult to comprehend how Mr. David "will be assisting Mr. Tomita due to his physical impairments" (Opp. at 7) and how Mr. Tomita will "rely on [Mr. David] in matters related to this lawsuit, including *at depositions and trial*." Opp. at 4; Tomita Dec. ¶ 32 (emphasis added). For example, as Messrs. Tomita and David are purported fact witnesses for Tomita, they will not be able to attend each other's trial testimony. *See* Fed. R. Evid. 615.

[9]   Tomita-US is a routine New York limited liability company that was formed only four months ago. The alleged exclusive license agreement between Tomita-Japan and Tomita-US is likely a non-arms length agreement between related parties whose relevance will likely be limited to the legal issue of standing and nothing else.

operations in New York City," but does not explain how that might make this District more convenient for Nintendo than the Western District of Washington, contrary to all of the record evidence. *See* Opp. at 10.

Tomita asserts that the Southern District of New York will be more convenient for Tomita-Japan and Tomita-US because they are "small companies and transferring the case to Washington will require both principals – Mr. Tomita and Mr. David – to travel for trial and possibly other court appearances." Opp. at 10. Tomita has not presented any record evidence that litigating this case in the Western District of Washington will cause any economic hardship on or business disruption to either Tomita entity. Mr. Tomita has to travel for trial and court appearances wherever this case is venued, and Seattle is closer to his home and Tomita-Japan's place of business in Tokyo. Accordingly, the convenience of the parties factor favors transfer.

      E.      The Relevant Documents are Located in the Western District of Washington and Japan

Tomita's opposition brief does not take a position as to whether this factor favors transfer, supports the denial of transfer, or is neutral. *See* Opp. at 9-10. It is uncontested that the most relevant documents – the technical documents relating to the design and development of the Nintendo 3DS – are located at NCL's headquarters in Kyoto, Japan. It is likewise undisputed that most of the marketing, sales and financial documents regarding the Nintendo 3DS are located at NOA's headquarters in Redmond, Washington.[10] Indeed, Tomita does not contest that Tomita-Japan's own documents are also located in Japan. *Compare* Opening Br. at 10 with Opp.

---

[10]   Tomita's claim that NOA's documents "will likely be produced out of the offices of Nintendo's attorneys – who are located in New York" is baseless speculation. *See* Opp. at 9. NOA's documents, like NCL's documents, have to be collected from their custodians in Redmond, Washington and Kyoto, Japan, respectively.

at 9-10. In short, there is no evidence that any documents relevant to the issues of infringement, invalidity or damages are located in this District. Accordingly, this factor favors transfer.

### F. Tomita Has the Means to Litigate in Washington

Tomita argues, without citing any evidence or case law, that because Tomita-Japan and Tomita-US are "small businesses" and Nintendo "has far greater resources for this litigation, this factor favors denying transfer." Opp. at 12. However, Tomita has not provided any evidence that it lacks the resources to litigate in the Western District of Washington or that litigating there would be significantly more costly than litigating in New York. The mere fact that Nintendo is a "large" company is irrelevant, and Tomita's unsupported assertions of hardship are insufficient. *See, e.g., Fuji Photo Film Co., Ltd. v. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 375-76 (S.D.N.Y. 2006); *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998). Thus, this factor does not weigh against transfer.

### G. Trial Efficiency and the Interests of Justice

Tomita argues that this factor "slightly favors denying transfer because discovery is already underway in this case..." Opp. at 12. The only discovery that has occurred in this case is that each side recently exchanged initial document requests, interrogatories and initial disclosures in accordance with the Case Management Plan (D.I. 20). Responses to these discovery requests are not due until the end of September/beginning of October, and the initial disclosures exchanged on August 29, 2011 will be equally usable in the Western District of Washington. Thus, this factor does not weigh against transfer.

### III. CONCLUSION

For the foregoing reasons and the reasons set forth in Nintendo's opening brief, Defendants respectfully request that this case be transferred to the Western District of Washington.

Dated: September 1, 2011
     New York, New York                  Respectfully submitted,

                                                KAYE SCHOLER LLP

By:   /s/ James S. Blank
       James S. Blank
       Scott G. Lindvall
       Stephen J. Elliott
425 Park Avenue
New York, New York 10022
Tel: (212) 836-8000
Fax: (212) 836-8629

*Attorneys for Defendants*