```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
TOMITA TECHNOLOGIES USA, LLC; TOMITA  :
TECHNOLOGIES INTERNATIONAL, INC.      :
                                      :    11 Civ. 4256 (JSR)
              Plaintiffs,             :
                                      :    MEMORANDUM
         -v-                          :
                                      :
NINTENDO CO., LTD.; NINTENDO OF       :
AMERICA INC.,                         :
                                      :
              Defendants.             :
------------------------------------- x

JED S. RAKOFF, U.S.D.J.
```



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _____

On June 23, 2011, Nintendo Co., Ltd. and Nintendo of America, Inc. (collectively, "Nintendo") filed a motion to transfer this case to the U.S. District Court of the Western District of Washington. On September 26, 2011, the Court denied Nintendo's motion. This Memorandum explains the reasons for that ruling.

Nintendo Co., Ltd. and Tomita Technologies International, Inc. ("TTI"), the owner of the patent at issue in this case, are corporations headquartered in and organized under the laws of Japan. Seijiro Tomita, the inventor of the patent in this case, also resides in Japan. Nintendo Co. argues that Washington, the location of Nintendo of America's headquarters, provides a more suitable venue for litigating this dispute than New York, the headquarters of Tomita Techonologies USA (together with TTI, "Tomita").

28 U.S.C. § 1404(a) permits a district court to transfer civil actions "[f]or the convenience of parties and witnesses" and "in the

interest of justice" to "any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Courts in this District, including this one, have for many years considered nine factors when deciding motions to transfer venue: "(1) the convenience of witnesses; (2) the location of relevant documents and relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of the operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of circumstances." Amerisham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp., 11 F. Supp. 2d 729, 730 (S.D.N.Y. 1998).

The parties concede that factors five, seven, and nine have no bearing on this motion. But technological advances have rendered certain of the other factors less relevant as well. See, e.g., TouchTunes Music Corp. v. Rowe Int'l Corp., 676 F. Supp. 2d 169, 174 (S.D.N.Y. 2009) (noting that, today, "location of the documents is not a significant factor in the convenience analysis"). For example, regarding factors two and four, the Court notes that Nintendo designed and developed the allegedly infringing product in Japan. Nintendo almost certainly will not physically ship documents that relate to the design process from Japan to the trial court. Instead, it will scan

2

those documents onto a computer, producing them with the click of a mouse in either New York or Washington. Similarly, with respect to factors one and three, travel has become cheaper and easier. Where multinational corporations compete over venue in cases that transcend borders, consideration of convenience to witnesses often devolves into an absurd comparison of the costs and durations of a few flights. Moreover, since depositions may occur virtually anywhere, the convenience of witnesses becomes relevant only at trial.

Accordingly, in cases such as this, where the operative facts largely occurred abroad, the Court focuses on the plaintiffs' choice of forum and the reasons for that choice (factor eight). In the analogous context of forum non conveniens, the Second Circuit gives "greater deference to a plaintiff's forum choice to the extent that it was motivated by legitimate reasons . . . and diminishing deference to a plaintiff's forum choice to the extent that it was motivated by tactical advantage." Iragorri v. United Techs. Corp., 274 F.3d 65, 73 (2d Cir. 2001). While a plaintiff's choice of forum is often given controlling weight where the plaintiff is an established resident of the forum, see id. at 71 ("[A] plaintiff's choice of her home forum should be given great deference."), even foreign plaintiffs, such as TTI, are entitled to some deference in their choice of forum where it was motivated by legitimate reasons. See Bigio v. Coca-Cola Co., 448 F.3d 176, 179 (2d Cir. 2006). Legitimate reasons for choosing a forum include "the plaintiff's residence in relation to the forum, the

3

availability of witnesses or evidence to the forum district, the defendant's amenability to suit in the forum district, the availability of appropriate legal assistance, and other reasons relating to convenience or expense." Iragorri, 274 F.3d at 72. In contrast, tactical advantage includes benefits from "local laws," the "generosity of juries," a defendant's "unpopularity in the region," or "the inconvenience and expense to the defendant resulting from litigation in that forum." Id.

Here, Tomita Technologies USA ("TTUSA") was incorporated in New York on April 21, 2011. Decl. of James Blank on August 11, 2011 ("Blank Decl."), Ex. 1. Clifford David, Seijiro Tomita's friend and business partner for over twenty years, organized TTUSA, listing his home address as the corporation's principal place of business. Decl. of Clifford David on September 5, 2011 ("David Decl."); Blank Decl. Ex. 1. Mr. Tomita and Mr. David founded TTUSA in order to license and develop Tomita's technology in the United States. David Decl.

Nintendo argues that the time of TTUSA's incorporation - shortly after the release of the allegedly infringing product on March 27, 2011, Decl. of Jacqualee Story on August 10, 2011 ("Story Decl.") - its location at Mr. David's residence, and the apparent lack of any business other than the prosecution of this lawsuit all reveal that Tomita is forum shopping. Nonetheless, when asked at oral argument what "tactical advantage" Tomita might hope to gain by litigating in this District, Nintendo's counsel argued only that "their counsel is

4

located here" and "doesn't want to litigate the case outside of New York." See Transcript at 4:16-20. Notably, Nintendo's counsel did not argue that litigating here would inconvenience Nintendo or place it at any disadvantage.[1] In response, Tomita asserts that Mr. Tomita suffered a stroke that has partially paralyzed him, that Mr. David will provide great assistance both by overseeing the litigation and by facilitating Mr. Tomita's participation, and that Mr. David can do so most easily in New York, where he lives. See David Decl. ¶¶ 4, 10.

The Court gives substantial weight to Tomita's choice of forum for the following reasons. First, while Nintendo has suggested that Tomita seeks to gain advantage by litigating where its lawyers practice, under Irragori the "availability of appropriate legal assistance" is a legitimate reason for choosing a forum, to which the Court should defer. 274 F.3d at 72. Second, Tomita's primary reason for litigating here, its longstanding business relationship with Mr. David, relates primarily to "convenience," another appropriate reason for selecting a forum. Id. Even if TTUSA had not incorporated here and was not a plaintiff in this action, TTI would surely have a legitimate interest in litigating in a forum where it could rely upon

---

[1] Given Nintendo's history of successful intellectual property litigation in the Southern District of New York, the Court cannot imagine that further litigation here will meaningfully inconvenience Nintendo or put it at any tactical disadvantage. See, e.g., Universal City Studios, Inc. v. Nintendo Co., Ltd., 746 F.2d 112, 120 (2d Cir. 1984) (upholding District Court's grant of summary judgment in favor of Nintendo).

the assistance of a trusted business partner. Finally, the other factors identified in Irragori are irrelevant. As described above, most witnesses and documents are in Japan such that, no matter who prevails on this motion, litigation will occur thousands of miles away. Moreover, Tomita cannot expect to avail itself of any of the various types of advantage to which Irragori refers. Thus, Tomita's reasons for litigating in New York are legitimate, and the Court defers accordingly.

Nintendo argues that, even if the Court defers to Tomita's choice of forum, it should still transfer the case because Washington is the "locus of operative facts" (factor four). Nintendo notes that, "[i]n patent infringement cases, the locus of operative facts is where the allegedly infringing product was designed, developed, and managed." Millennium, L.P. v. Hyland Software, Inc., 2003 WL 22928644, at *5 (S.D.N.Y. Dec. 10, 2003). While Nintendo concedes that it designed and developed the allegedly infringing product in Japan, it claims that substantial management occurred in Washington, where it made sales and marketing decisions. Story Decl. ¶¶ 5, 9. Nonetheless, Millenium nowhere defines what managing a product means in this context, and other cases omit reference to management entirely. See Fuji Photo Film Co, Ltd. V. Lexas Media, Inc., 415 F. Supp. 2d 370, 375 (S.D.N.Y. 2006) ("Operative facts in a patent infringement action include facts relating to the design, development, and production of a patented product." (internal quotation marks

6

omitted)). Focusing on marketing and sales information makes little sense in a case such as this, where such information will not pertain to the central question of whether Nintendo actually infringed the patent. Depending on the resolution of that question, marketing and sales information may not be necessary at all.

Assuming arguendo that Washington is the "locus of operative facts" for the limited purposes identified by Nintendo, another consideration, the "relative means of the parties" (factor six), overwhelms any weight attributable to that factor. Nintendo is one of the world's major videogame producers and has a substantial business presence everywhere in the United States, including New York. See Decl. of Kenneth Stein on August 25, 2011. Tomita, in contrast, promotes the technology of one individual inventor, as its name suggests. Decl. of Seijiro Tomita on August 24, 2011, ¶ 13. Given the disparity between the two parties' relative means, the Court refuses to force Tomita to litigate in a less convenient forum merely because Nintendo made some comparatively minor decisions there.

Finally, the Court notes that, even giving full weight to Nintendo's contentions regarding the location of documents and the convenience of witnesses, it would still deny Nintendo's motion. As noted before, most relevant documents are located in Japan, and Nintendo must transfer them thousands of miles regardless of whether it litigates here or in Washington. Similarly, while Nintendo identifies two witness in Washington, Story Decl. ¶¶ 14-15, and four

7

Japanese witnesses who will find Washington more convenient, Declaration of Toshiro Hibino on August 8, 2011, ¶¶ 10-14, Tomita has identified a key witness, Mr. Tomita, who will find New York more convenient. Given the disparity between the parties' means, the modest inconvenience to Nintendo's six witnesses - which Nintendo apparently concedes places it at no disadvantage - does not outweigh the considerable deference the Court must give to the plaintiff's choice of forum. See Ford Motor Co. v. Ryan, 182 F.2d 329, 330 (2d Cir. 1950) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." (internal quotation marks omitted)).

Lastly, the Court takes note that motions to transfer venue, if granted, inevitably delay the proceedings. Indeed, such tactical advantage is not unlikely to be a reason for a defendant's bringing such a motion. It is not in the interest of justice to countenance delay when, as here, no substantial countervailing purpose will be served. Accordingly, for the foregoing reasons, the Court, by Order of September 26, 2011, denied Nintendo's motion to transfer the case to the Western District of Washington.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
       October 13, 2011