199TTOMA

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    TOMITA TECHNOLOGIES U.S.A.,
     LLC and TOMITA TECHNOLOGIES
4    INTERNATIONAL, INC.,

5                Plaintiffs,

6          v.                              11 CV 4256 (JSR)

7    NINTENDO CO., LTD. and
     NINTENDO OF AMERICA, INC.,
8
                Defendants.
9
     ------------------------------x
10                                         New York, N.Y.
                                           September 9, 2011
11                                         5:20 p.m.

12   Before:

13                    HON. JED S. RAKOFF,

14                                         District Judge

15                       APPEARANCES

16   STROOK & STROOK & LAVAN
          Attorneys for Plaintiffs
17   BY:  KENNETH L. STEIN
          ALEXANDER SOLO
18
     KAYE SCHOLER
19        Attorneys for Defendants
     BY:  JAMES S. BLANK
20        STEPHEN J. ELLIOT

21

22

23

24

25

199TTOMA

1     (Case called)

2         THE COURT:  Good afternoon.  We're here on the

3     defendant's motion to transfer venue.  The question is whether

4     it should remain in this Court or be transferred to the

5     District of Washington.

6         My preliminary view is that the critical question on

7     this motion is whether Tomita's incorporation in New York only

8     months ago was in some sense artificial or an exercise in

9     prospective forum shopping or whether it had an impendent

10    legitimate basis.  If it's the latter, then it seems to me the

11    strong presumption in favor of plaintiff's choice of forum

12    would be a weighty factor against the motion; not dispositive,

13    but significant.  It seems to me that, on the other hand, if it

14    was the former, a sham in the sense of artificial for the

15    purpose of forum shopping, then the balance of conveniences may

16    tip in favor of the transfer.

17        Many of the factors that have historically been

18    considered by the courts in considering a transfer motion, it

19    seems to me with every passing year of less relevance, for

20    example, the location of documents.  The location of documents

21    today is in computers whose physical location is almost a total

22    irrelevancy.  The documents can be obtained through pressing

23    some buttons anywhere in the world once access is granted.

24        In this case, the convenience of the parties, although

25    not irrelevant, is perhaps not a major factor -- I shouldn't

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

199TTOMA

1    say the convenience of the parties, the convenience of

2    witnesses, to the extent they will have to travel from Japan.

3    The truth of the matter is that depositions can be held

4    anywhere, the location of the litigation doesn't control

5    necessarily where the depositions are held.  This Court could

6    well order that depositions be held in Japan, assuming it was

7    consistent with Japanese law.

8          So we're talking about, in terms of convenience of

9    witnesses, we're talking about the trial of the case.  Since

10   95 percent of all federal civil cases settle, that is a minor

11   factor.  Plus, here we're talking about, so far as the Japanese

12   witnesses are concerned, a difference of maybe a few hours on

13   an airplane at the very start of the trial and at the very end,

14   so that would not, in this Court's view, would be a very

15   material factor.

16         I'm not going to go through all the factors, some are

17   more important than others, but it does seem to me that what

18   looms largest is the question of whether the location of the

19   plaintiff in the Southern District of New York was done for any

20   other purpose but to bring this litigation.  Defense counsel

21   claims that was his real purpose, barring that, that it has no

22   other material purpose that they can discern.  Plaintiff's

23   counsel argues otherwise.  We may have to have an evidentiary

24   hearing, if it this issue controls.  But having said that, let

25   me hear first from moving counsel.

4

199TTOMA

1              MR. BLANK:  Thank you, your Honor.

2              Let me address the point that you view as looming

3       large here.  To begin with, there are two plaintiffs, there is

4       Tomita International and then there is Tomita -- what I'll call

5       Tomita U.S.  And your Honor was referring to whether in fact

6       Tomita U.S.'s formation --

7              THE COURT:  Well, the other company is in Japan.

8              MR. BLANK:  Correct, the other company is in Japan.

9              THE COURT:  But no one moved to transfer this case to

10      Japan.

11             MR. BLANK:  Correct.  Tomita U.S. -- the timeline

12      suggests that it was formed here at least in part for creating

13      the appearance that this particular district is convenient for

14      it.

15             THE COURT:  What would be the motive for that?

16             MR. BLANK:  The motive for it potentially could be

17      that their counsel is located here.

18             THE COURT:  Well, the fact --

19             MR. BLANK:  And their counsel doesn't want to litigate

20      the case outside of New York.  It's convenient for its counsel.

21             THE COURT:  Is this their regular counsel?

22             MR. BLANK:  I don't know.  It can't be the regular

23      counsel, the company is only four months old.  So the company

24      was formed a month after the product at issue here, that

25      Nintendo 3DS was released on March 27.  The company was formed

SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

199TTOMA

1    less than a month later and the lawsuit was brought two months

2    after that.  So they don't -- I don't believe they have any

3    regular counsel.

4            The record is clear that they have no employees here.

5    They have -- their business, quote, unquote, is licensing and

6    commercialization of Mr. Tomita's patents.  There's no evidence

7    of what that business actually is other than the filing of this

8    lawsuit, or whether that business has manifested itself in any

9    way at all.  It has no employees here.  So where the record is

10   right now is what I said.

11           But even going to the point of the deference to be

12   given to plaintiff's choice of forum, if it was here for

13   legitimate purpose, where -- and the Court is very clear on

14   this point -- where the locus of operative facts is not New

15   York, which is this case, and where there is no material

16   connection between plaintiff's claims and Southern District of

17   New York, then the deference given to plaintiff's choice of

18   forum is significantly diminished.

19           THE COURT:  Where do you say the locus is?

20           MR. BLANK:  The locus is Japan and the Western

21   District of Washington.

22           THE COURT:  So if the locus is, in my hypothetical,

23   Kentucky, and someone with very modest ties to New York brings

24   an action in New York and the other side says send us to

25   Kentucky because that's really where the heart of all this

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

199TTOMA

1    occurred, that's one thing.  But you're not asking that, you're

2    saying, and they're saying, too, to some degree, everyone seems

3    to agree the locus is in Japan, which makes some sense,

4    although it files an American patent which is a strong factor

5    why both sides would want a U.S. court to decide this dispute.

6    But my point is I'm not sure that my previous cases on this

7    point and other cases with other judges are really quite

8    addressing what you're talking about, because no one is asking

9    that this case be sent to Japan.

10           MR. BLANK:  That's correct.  But I would submit that

11   the locus of operative facts is Japan and the Western District

12   of Washington, which is where Nintendo of America's

13   headquarters is located.

14           THE COURT:  When I said the District of Washington, I

15   meant the Western District of Washington.  I'm not sure what

16   the other districts of Washington are.

17           MR. BLANK:  I think there's an Eastern District of

18   Washington.

19           But Nintendo of America, based in the Western District

20   of Washington, is the company that sells, markets and

21   distributes the Nintendo 3DS in North America, including in

22   Japan.  As a result, there are, and we have identified, three

23   witnesses from Nintendo of America.

24           In addition, as you noted, we have identified

25   witnesses in Japan, as have they, who are employees of Nintendo

199TTOMA

1    Company Limited in Japan, and it is a resident, who is their

2    key witness and their only witness that they have identified

3    that has any --

4            THE COURT:  But I guess the point I wanted to make

5    before, maybe you want to address it, the historical list of

6    factors -- which all of us, including this Court, certainly

7    cite by rote every time that we issue an opinion on a 1404

8    transfer motion -- really was formulated at a time when travel

9    was arduous, when the physical location of documents,

10   witnesses, et cetera, was really important.

11           And there still may be cases, some of the cases that

12   this Court gets on diversity involving persons of limited

13   means, witnesses of limited mobility and so forth, will fit

14   that pattern.  But when you're talking about international

15   corporations, these things really become somewhat artificial.

16   They're not entitled to no weight, but they're not exactly

17   earth shaking in their significance, which is why I focused on

18   the first issue.

19           For example, if this case were much further along than

20   it is, I would say that the last factor that is usually cited,

21   which is judicial economy and judicial efficiency, would

22   overwhelm all the factors, because the importance of getting a

23   case to finality when it's already been fully litigated in one

24   district and the importance of having a court that is fully

25   familiar with the issues when it's already been fully litigated

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

199TTOMA

1  in this day and age is a vastly more important factor than

2  those other factors that once used to loom large and now

3  seem -- to this court, seem to loom much less large.

4          But of course in this case you promptly brought this

5  motion early on in the case, so that factor is much less

6  important.

7          MR. BLANK:  Right.  I would agree with your Honor that

8  the location of documents is pretty much in every case not a

9  significant factor anymore.

10         THE COURT:  To go back to the point that I mentioned,

11 as to witnesses, since the Court has the power to order

12 depositions anywhere, and I am usually of the view that

13 convenience of witnesses should loom large in determining where

14 a deposition should be taken, really the only inconvenience is

15 going to be traveling to trial where, for the Japanese

16 witnesses, is going to be a few extra hours for one day coming

17 in and one day coming out.  And that's not zero, but that's not

18 exactly the inconvenience of the century either.

19         MR. BLANK:  I think that's fair in part.

20         THE COURT:  Well, I try.

21         MR. BLANK:  First of all, the difference in travel

22 time can be significant, depending on the route that's taken

23 and the flights available, but the more important point is that

24 the Nintendo witnesses who have been identified -- and we

25 identified four technical witnesses to testify on the structure

199TTOMA

1    and operation of the Nintendo 3DS's cameras.  They identify

2    seven additional NCL witnesses who allegedly attended a meeting

3    in 2003 with Mr. Tomita and others, who, in their initial

4    disclosures, they listed each of those gentlemen.

5            So the issue here is not just the travel time and the

6    additional time zones involved, but it's the fact that those

7    witnesses can work out of Nintendo's headquarters during trial

8    in the Western District of Washington, where they can easily

9    communicate and continue to do their work with much less

10   business disruption to Nintendo than if they were here.

11           And we put in evidence --

12           THE COURT:  Sorry, maybe I am not sufficiently

13   particular with how modern business men and business women

14   operate.  My image is of folks who are regularly traveling all

15   over the world and who are able to conduct their business day

16   and night because they bring a laptop with them.

17           Am I misunderstanding something?

18           MR. BLANK:  No, you're not misunderstanding the

19   communication, but the people that these NCL witnesses

20   typically communicate with are at Nintendo in Redmond,

21   Washington.  And they could work there, be given offices there,

22   and communicate directly with these people during the course of

23   the trial.

24           THE COURT:  Well, first of all, hopefully during the

25   course of trial they might want to actually focus on trial.

199TTOMA

1   But secondly, are you representing to me that those individuals

2   don't regularly travel on business?

3           MR. BLANK:  Those particular individuals don't.  They

4   are relatively, for the most part, low-level engineers who do

5   not travel on business and do not speak English, and who

6   primarily --

7           THE COURT:  Of course the English part is neither here

8   nor there because most of the people in Washington I suppose do

9   speak English and don't speak Japanese.  And of course in New

10  York, we don't speak either language.  But I get your point.

11          Let me hear from your adversary.

12          MR. BLANK:  May I address one other point?

13          THE COURT:  Yes.

14          MR. BLANK:  As to the deference point, the

15  underpinning of that factor is that the -- inherently that the

16  plaintiff has decided for -- sorry, the non-moving party has

17  decided for itself that this is the more convenient district

18  for it or forum for it, and therefore the deference is given to

19  it.

20          However, when you look at -- that's why it's important

21  that the fact that here in this case there are no material

22  operative facts that occurred in the Southern District of New

23  York, and there are no material witnesses here.  So that's why

24  the case is -- irrespective of whether the operative facts are

25  in Japan or in the Western District of Washington, they're not

199TTOMA

 1   here.  And because they're not here, that's why there are no

 2   witnesses here other than purportedly Mr. David who is not a

 3   material witness in any event.  And the company has no

 4   employees here, no business operations here, other than the

 5   filing of this lawsuit.  That's why, in this case, that the

 6   deference should be significantly diminished, because this is

 7   not the locus of operative facts.  So I wanted to make that

 8   final point.

 9             THE COURT:  I thought that was the point you were

10   making earlier, but it's well stated and worth making again.

11             Although you have correctly stated what the case law

12   says is the reason for the deference given plaintiff's choice,

13   in fact I think if you really look behind those cases and parse

14   out why cases went one way in one motion and another way in a

15   different motion, to the extent that a motion to transfer looks

16   like a motion to derail or delay an otherwise efficient

17   litigation, it tends to be viewed with disfavor.  To the

18   extent, by contrast, that the bringing of a case in a

19   particular district looks like forum shopping, a motion to the

20   transfer is often viewed very favorably.

21             So while you correctly state, as you should, what the

22   ostensible law is, if you will, I think a more realpolitik view

23   of it is no Court looks favorably on forum shopping and no

24   Court looks favorably on tactical delay.  So I think those have

25   to be factored in as well.

199TTOMA

| | |
|---|---|
| 1 | So let me hear from your adversary. |
| 2 | MR. BLANK:  Thank you, your Honor. |
| 3 | MR. STEIN:  Good afternoon. |
| 4 | The reason why -- |
| 5 | THE COURT:  Who incorporated -- what law firm |
| 6 | incorporated Tomita here? |
| 7 | MR. STEIN:  I'm not sure if it was -- it was not us. |
| 8 | It was not Strook.  It was not our firm.  I'm not sure which |
| 9 | firm it was. |
| 10 | THE COURT:  The allegation is this case is being |
| 11 | brought here because it's convenient for the lawyers.  And |
| 12 | there are actually cases going both ways as to whether that's a |
| 13 | relevant factor to be considered one way or the other.  But one |
| 14 | wonders why this case was brought here.  What does this case |
| 15 | have to do with New York? |
| 16 | MR. STEIN:  The reason why this case brought in New |
| 17 | York is because that's where Tomita U.S.A. is located. |
| 18 | THE COURT:  And why is Tomita U.S.A. -- it's been here |
| 19 | for how long, three months? |
| 20 | MR. STEIN:  The reason why -- frankly the reason why |
| 21 | it's located here is because this is where Clifford David |
| 22 | lives, who is the manager of Tomita U.S.A., and is manager. |
| 23 | THE COURT:  How long has he been the manager? |
| 24 | MR. STEIN:  Well, since its formation, which has been |
| 25 | a few months. |

SOUTHERN DISTRICT REPORTERS, P.C.        (212) 805-0300

199TTOMA

1          THE COURT:  And for what purpose was he hired?

2          MR. STEIN:  Well, he is a long-time business associate

3     and friend of Mr. Tomita, who is the principal of Tomita

4     Technologies International.  They have been working together

5     for 20 years.

6          THE COURT:  So what you're really saying is that

7     Mr. Tomita had a good buddy who he thought he wanted to be

8     their U.S. representative, and that guy happened to live in New

9     York and so incorporated in New York.  And now we have this

10    gigantic, one-person home office bearing the mighty name of

11    Tomita Technologies U.S.A.  Why should I give any deference to

12    that?

13         MR. STEIN:  Well, Tomita Technologies U.S.A. was not

14    formed just for the purpose of this lawsuit, it was formed for

15    the purpose of commercializing Mr. Tomita's technology in the

16    U.S.

17         THE COURT:  What does it do in that regard?

18         MR. STEIN:  Well, he's been talking to people.  I'm

19    not quite at liberty to say too much in open court, assuming it

20    will be subject to confidentiality.

21         THE COURT:  You don't have to say anything in open

22    court, but if I don't have any evidence, I have to assume the

23    absence of evidence.

24         MR. STEIN:  He is doing other activity other than this

25    lawsuit trying to commercialize the technology, get companies

199TTOMA

1    interested.

2              THE COURT:  Has any contract been signed?

3              MR. STEIN:  Not to my knowledge, but there have been

4    discussions with other companies.

5              THE COURT:  Has any other lawsuit been brought?

6              MR. STEIN:  No.  Commercialization efforts are not

7    just to enforce the patents.

8              THE COURT:  I understand that, but I'm trying to

9    figure out, in terms of anything other than talk, the only

10   thing that happened is this lawsuit has been brought.  Yes?

11             MR. STEIN:  Well, I think the talk is -- the talks are

12   substantial, meaningful talks which hopefully will lead to

13   commercialization in the U.S., but it's not -- in terms of a

14   hard, concrete event, yes, this lawsuit would be it.

15             THE COURT:  Go ahead.

16             MR. STEIN:  So they're not just buddies per se, they

17   have been working together on real business ventures.

18             THE COURT:  I didn't mean to imply anything, I assume

19   that these are hard-headed business men, not just folks who met

20   at the bar.  So I take that for granted.

21             MR. STEIN:  Also Nintendo questioned -- in its reply

22   brief questioned whether Mr. David resides in New York.  He

23   does.  It's been his principal residence for many years now.

24             THE COURT:  What about -- wasn't there a suggestion, I

25   don't quite remember, in the papers about Florida being his

199TTOMA

```
1    residence?

2              MR. STEIN:  Well, it's not any more, he moved to New

3    York.  I have a declaration from him that we got from Mr. David

4    after the reply brief -- I provided it to Nintendo's counsel

5    yesterday -- in which he states --

6              THE COURT:  Let me see it.

7              MR. BLANK:  For the record, I object to it.

8              THE COURT:  It's always good to object to it for the

9    record.

10             MR. BLANK:  I object to it for the record as

11   effectively an improper surreply brief.

12             THE COURT:  Denied.

13             MR. BLANK:  The declaration is --

14             THE COURT:  You tell me when you're through, but in

15   the meantime I want to look at it.

16             MR. BLANK:  OK.

17             THE COURT:  You go ahead, I'll read it while you talk.

18             MR. BLANK:  The declaration supports assertions that

19   they made in their opposition brief, specifically that

20   Mr. David resides in New York, and that the reason for the

21   formation of the company is because Mr. David resides in New

22   York.

23             We pointed out in our reply brief that there is no

24   evidence of that, as a result I think they felt the need to do

25   something about it.  So they got this declaration from him.  As
```

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

199TTOMA

1    you see, it's dated September 5th.  It was provide to me

2    yesterday afternoon about 3:00.  It has not been filed with the

3    Court or provided to your Honor until now.  Interestingly, it

4    is executed in California, not New York, if you look at the

5    last page.  It has a fax header on it from a company called

6    Freeze Frame LLC, being faxed presumably to the Strook firm

7    from California, not New York, and it clearly suggests that it

8    is not a burning issue for Mr. David to travel, and he clearly

9    does travel.  And I can say a bunch of other things about it as

10   well, but I'll let you read it first and then respond in due

11   time.

12          THE COURT:  Well, all that you were saying, which I'm

13   happy to hear you on, goes to the merits or demerits of this

14   affidavit, but I thought what you wanted to address was why you

15   thought I shouldn't receive it.

16          So as I understand the situation, you had moving

17   papers, you had reply papers.  You got two bites at the apple,

18   they got one.  So it might have been a good idea, and certainly

19   more consistent with my rules if they called yesterday with you

20   on the phone and said we would like to present it, but they

21   certainly didn't try to file it or to anything with it, they

22   brought it here today.  And they gave it to you, you had a

23   chance to look it over and you're about to tell me the hundred

24   reasons why you think it doesn't support their position, so I

25   don't see why in the world I won't receive it, and I will.

199TTOMA

1          Let's go back, and we'll of course hear from defense

2     counsel about this affidavit in a few minutes.

3          MR. STEIN:  I would like to make one point about why

4     we obtained it after the reply.  Frankly, we didn't think there

5     was an issue regarding whether Mr. David resided in New York

6     because --

7          THE COURT:  I think it's really good that you now want

8     to respond to his argument against my receiving it when I have

9     already ruled against him, but if you want to talk me out of my

10    ruling, you can continue.  On the other hand, you might want to

11    go back to addressing the merits of the motion.

12         MR. STEIN:  As Mr. David states in his declaration, he

13    not only -- Freeze Frame is a company that has.  It was in

14    Florida, it moved to New York.  He was traveling in California

15    when we got this.

16         He employs 150 to -- through his company, 150 to 200

17    people in New York.  Freeze Frame is a seasonal business, so it

18    depends on the season, but not only does he reside here, he has

19    substantial business here.

20         THE COURT:  But that's not business we're talking

21    about in this lawsuit.

22         MR. STEIN:  Right.

23         THE COURT:  In other words, if company X, which had

24    absolutely no connection to New York in my hypothetical,

25    brought a lawsuit in New York and was challenged in a motion to

199TTOMA

1    transfer and the response was well, it's true we have

2    absolutely no connection to New York but our agent has a

3    different business which has a thousand employees in New York,

4    what would that matter?  It wouldn't matter at all, would it?

5            MR. STEIN:  I only mention it because it further

6    supports the reason that it was brought here is because

7    Mr. David is here, and Mr. David is not only a resident here,

8    he has business here.  Your point as to its direct relevance is

9    correct.  That's why.

10           THE COURT:  Go ahead.

11           MR. STEIN:  The bottom line to the first point that

12   you raised is that this isn't a sham.  We didn't incorporate in

13   New York to generate venue here.  It was incorporated for

14   legitimate business reasons, and that's why we're here.

15           THE COURT:  I also don't understand in your affidavit

16   you say:  Mr. Tomita suffered a stroke several years ago that

17   left him partially paralyzed on his left side.  I anticipate

18   that I will be of vital assistance to Mr. Tomita in connection

19   with this litigation since the logistics and physical demands

20   of being with his lawyers and attending hearings and trial and

21   attending his deposition will be difficult for him.  I have

22   been a friend of Mr. Tomita for many years.  I know he will

23   feel much more comfortable having me assist him in these

24   activities than a stranger.

25           Well, we come back to the fact we're only talking

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

199TTOMA

1    about the trial, because the deposition could occur -- in

2    effect this would be a good situation for a deposition in

3    Mr. Tomita's home or nearby if he has a physical disability.

4            And at the trial, Mr. David and Mr. Tomita --

5    Mr. David would almost surely be there for the whole trial, so

6    he could assist Mr. Tomita whether it was in the State of

7    Washington, the State of New York or anywhere else.

8            MR. STEIN:  I'm not sure that the only time Mr. Tomita

9    would have to go to court is at trial.  It's not uncommon to

10   have a court-ordered mediation or some type of mediation

11   process.  There could be other hearings before trial.

12           THE COURT:  I never order a mediation.  If parties

13   want to be referred jointly for settlement, I'm always happy to

14   do that, but that's when the parties agree on it.

15           MR. STEIN:  I have been before courts where mediation

16   was mandatory.

17           THE COURT:  There are such courts, and it's your

18   misfortune this is not one of them.

19           MR. STEIN:  If we went to -- if the case -- of course

20   it's not whether this Court wants one, the question is

21   whether -- well, maybe that is part of the question.  But if it

22   was moved to Washington, it would depend on the judge.  There

23   is also often a Markman hearing in a patent case.

24           THE COURT:  I'm sure the highlight is a Markman

25   hearing in any case, but usually that's attended only by the

1    lawyers.

2           MR. STEIN:  That is often the case.  Sometimes there

3    are evidentiary Markman hearings, sometimes there are other

4    proceedings.  So it may be the case that there are other

5    situations in which --

6           THE COURT:  Let me ask a question which I'm not sure

7    anyone answered in their papers.  What is the average time for

8    a patent case to go from start to completion in the Western

9    District of Washington?

10          MR. STEIN:  I had a paper that was authored recently,

11   I forget the person's name, I believe it's on the order of two

12   and a half years that -- the information is there, we could get

13   it.

14          THE COURT:  Because in my court it's much faster than

15   that.

16          Let me go back to your adversary for a minute and come

17   back to you in a second.  Thank you.

18          MR. BLANK:  To respond to your point about the average

19   time in the Western District of Washington, I don't have those

20   statistics in front of me.  What I know, and what we pointed

21   out in our papers is the Western District of Washington has

22   adopted local patent rules that do set hard deadlines for all

23   three trial procedures, claim construction, Markman hearing,

24   and there are certain dates out.  So there is a structure in

25   place in that court that provides efficiency for patent cases.

199TTOMA

1     As this Court has recognized in prior transfer cases, those

2     types of statistics are not -- may not be particularly

3     meaningful because it depends on which judge you get, like this

4     court.

5             THE COURT:  Absolutely correct.  But I know the New

6     York side of this.  I can only go from general evidence with

7     respect to the Washington side, because no one knows what judge

8     would get the matter.  But you know that in my Court we would

9     move this case rapidly.

10            MR. BLANK:  Correct.

11            THE COURT:  And what defendant would ever want that?

12            Going back to the issue that still seems to me to be

13    very significant, which is the nature of the plaintiff's

14    presence in New York.  So on the one hand I think it's clear

15    from the candid responses I received from plaintiff's counsel

16    that so far virtually nothing has happened of definitive

17    importance in New York on the part of Tomita Technologies but

18    the bringing of this lawsuit.

19            On the other hand, let's assume for the moment, at

20    least, that they didn't just incorporate in New York to bring

21    this one lawsuit.  That would seem like perhaps odd for them to

22    do.  So let's assume for arguendo, for the purpose of my

23    question, that that was the first thing that they did, but

24    they're working on lots of other stuff, none of which has come

25    to fruition, but it's in the works.  I take it your view is

199TTOMA

```
1    well, that's all fine and good in the future, but at least as
2    far as the present goes, they still have virtually no presence
3    here except to bring this lawsuit, so they're not entitled to a
4    lot of weight.
5         But the argument the other way is you got to start
6    your company in someplace sometime, and the happenstance that
7    the first thing they did was bring this lawsuit shouldn't mean
8    they don't have a significant presence in New York if they do
9    have bone fide intentions -- again, just assuming that for the
10   sake of this question -- to do all these other things in New
11   York.  So what about that?
12        MR. BLANK:  Well, I don't know what -- there's no
13   evidence of what they have been doing other than counsel saying
14   that they have had some discussions.  I don't know who they
15   have had those discussions with, whether they're about this
16   specific patent in suit.  My position will be there still
17   remains zero evidence other than the bringing of the lawsuit --
18   well, there is zero evidence of any facts or events or conduct
19   on their part that in any way relates to this litigation.
20        THE COURT:  I guess I didn't make my question very
21   clear.  I think your arguments -- and it may be a winning
22   argument, I don't know -- that their presence in New York other
23   than the mere bringing of this lawsuit here, which is the point
24   at issue here, so to speak, is quite moxie.  On the other hand,
25   I'm not sure it's a case of forum shopping.  It may be
```

1   convenience, and the convenience may be Mr. David's

2   convenience, but it's different from a classic forum shopping

3   situation where you go down to certain counties in certain

4   states and bring your class action.  So if it's not forum

5   shopping, do you still win, is my question.

6          MR. BLANK:  I believe that we still win.

7          THE COURT:  And how do you assess the weight to be

8   given on this hypothetical, the plaintiff has a presence here,

9   it's a new presence, it's not yet a significant presence, but

10  it's a perfectly bone fide presence, the expectation of having

11  a significant presence here, but that hasn't yet happened.  Why

12  should we deny them the presumption that's accorded to suing

13  where you have no presence when it just so happened that you

14  have to bring your first lawsuit sometime, and they brought it

15  now?

16         MR. BLANK:  Because the presumption doesn't reflect

17  the reality, and the reality is there are two plaintiffs here,

18  and one is located in Japan and has no presence here

19  whatsoever, and its witness is in Japan.  And with respect to

20  the U.S. entity or the newly formed New York entity, as it

21  stands right now, that company is merely an exclusive licensee.

22  It is not an indispensable party to this case.  Tomita

23  International could have brought this case and had standing

24  without that exclusive licensee.  It has no employees.

25         It's only the facts on the ground are such that the

199TTOMA

1    presumption should be significantly diminished because it has

2    no material witnesses.  It has no documents.  It has had no

3    interactions with any third parties who are to be witnesses in

4    this case.  It hasn't entered into any licenses with any third

5    parties which may be relevant in this case.  There's no

6    indication that anything real has happened that affects the

7    particular factors in this case other than in a way that tips

8    in our favor.

9              And I want to note about the declaration what it

10   doesn't say.  And now they have had ample opportunity to fully

11   consider everything, all of our arguments, and to make certain

12   points.  The declaration says that he resides in New York and

13   that the company was formed in New York because he resides in

14   New York.  But it doesn't state that the Western District of

15   Washington would be inconvenient for Mr. David or explain why

16   that's the case.  It doesn't state that the Western District of

17   Washington would be inconvenient for Tomita as an entity or as

18   a party, i.e., cause any business disruption to it.  It doesn't

19   state that the Western District of Washington would cause any

20   economic hardship on Tomita.  And most importantly, it says

21   that one of the reasons it was incorporated here is because

22   Mr. David lives here, but it doesn't deny that another reason

23   why it may have been incorporated here was to create the

24   appearance that this forum is more convenient.  That would be

25   the easiest thing for him to say.  Mr. David could have said in

199TTOMA

1    the declaration that is incorrect.  But he doesn't say that.

2              THE COURT:  I'm not sure that it fails to say all that

3    you say it fails to say.  For example, where it talks about in

4    paragraph 10, which you read before about how Mr. David could

5    be of assistance to Mr. Tomita, that seems to me to be not at

6    all unsimilar to the argument you were making about it would be

7    great for those engineers to be in Washington so that they

8    could have all the office facility available to them.

9              Here what the argument is it would be great for

10   Mr. Tomita to be here, because with his physical disability and

11   my home being here, I, Mr. David, could accommodate him in a

12   way that would take account of his disability.  So I'm not sure

13   it's quite the absence of argument that you just posited.

14             MR. BLANK:  But paragraph 10 suggests that -- it uses

15   the term Mr. Tomita would be more comfortable with me than a

16   stranger.  Is that suggesting that if this case were in the

17   Western District of Washington that Mr. David would not go

18   there to assist Mr. Tomita?  That's what I took away from it,

19   but I don't think that's correct.  I mean you can ask them, but

20   it doesn't strike me as correct.

21             THE COURT:  Do you think if this case were here that

22   Nintendo wouldn't send -- if they thought these engineers were

23   vital to carry on the business activities during the trial

24   wouldn't send someone to assist them?

25             MR. BLANK:  They would.

199TTOMA

```
 1                    THE COURT:  Yeah.
 2                    MR. BLANK:  But they're suggesting --
 3                    THE COURT:  It cuts both ways is my point.
 4                    MR. BLANK:  They suggest in paragraph 10 that he
 5      wouldn't.
 6                    THE COURT:  Well, do we have a case management plan in
 7      place?
 8                    MR. BLANK:  Yes.
 9                    THE COURT:  When is the trial ready date?
10                    MR. BLANK:  I believe March 22nd.
11                    THE COURT:  Assuming arguendo -- and I may know
12      this -- that I transfer the case, I assume that you would agree
13      that that should be conditioned on the parties continuing to
14      adhere to the case management plan until and unless the judge
15      in Washington orders otherwise.
16                    MR. BLANK:  I would agree to that.  I haven't spoken
17      with my client, but if that was the condition, then yes.
18                    THE COURT:  For these purposes, I think you are
19      authorized to bind your client.
20                    MR. BLANK:  The answer is yes, because it turns --
21      nevertheless it still is a matter of convenience.
22                    THE COURT:  The reason I put this is the obvious one,
23      if your motive were delay, you wouldn't have agreed to what I
24      just asked.
25                    MR. BLANK:  Correct, and I agreed to it.
```

199TTOMA

1          And I want to make one other point.  This patent issue

2     in 2008 -- and again, getting back to the timeline, Tomita

3     U.S. -- Tomita U.S. was not formed around 2008, it was formed

4     three weeks after the Nintendo 3DS was introduced.  They say

5     they're in the licensing business, they never came to us after

6     the patent issue, they never came to Nintendo and offered us a

7     license.  Instead, three weeks after the 3DS was released in

8     the United States, they just sued us.

9          THE COURT:  All right.  Let me hear finally from

10    plaintiff's counsel.

11         MR. STEIN:  I would like to address a couple of points

12    that were raised when Mr. Blank first talked.

13         In terms of the witnesses, basically they're asking

14    this Court to transfer the case because there are three

15    witnesses on the West Coast.  They identified two in

16    Washington, two witnesses in the Western District of

17    Washington, then there was one they identified I think in the

18    reply, might have been the initial disclosures in California.

19         So in terms of the Western District of Washington,

20    there's just two witnesses there.  Here we have Mr. David, who

21    will be a witness, and there's also -- they identified two of

22    Tomita's prosecution counsel who are in Washington in their

23    initial disclosures.

24         By the way, they also spoke about the people from

25    Nintendo that we identified in our initial disclosures.  Those

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

199TTOMA

1   aren't necessarily witnesses at trial, those are people who may

2   have evidence that will support our claims or defenses.

3   Mr. Tomita met with --

4          THE COURT:  That's of course true, but no one can

5   predict at this stage who will be all the witnesses at trial,

6   so isn't it reasonable to assess the convenience of witnesses

7   based on who the parties have identified as the persons with

8   knowledge?

9          MR. STEIN:  It may be.  I won't say more about it, but

10   I think at this point the seven people that attended the

11   meeting with Mr. Tomita back in I think 2003, but I would have

12   to double-check, I don't think it's likely that all seven of

13   those people would be a witness at trial.  The bigger point is

14   there are just two witnesses --

15          THE COURT:  If the trial is in my court, I guarantee

16   you all seven of them will not be witnesses.

17          MR. STEIN:  The bigger point there are two witnesses

18   in Washington they have identified.  And well, I said it in my

19   motion papers, and they responded that it's not for us to

20   consider the witnesses.

21          THE COURT:  Essentially what they're arguing, to pick

22   up on the point you made, is this is a case where neither side

23   can show overwhelmingly that it would be a huge inconvenience

24   one place or the other.  So we're operating on a much smaller

25   scale in terms of the degree of inconvenience.  But within that

199TTOMA

1    smaller scale, they say they have established, least some

2    material inconvenience, and you have established almost none

3    other than for Mr. David.  That's, I think, perhaps part of

4    their argument.

5          MR. STEIN:  Well, I think that they have established

6    almost no inconvenience, and perhaps our inconvenience isn't

7    greater, but --

8          THE COURT:  That's why I agree with you, that's why I

9    come back to the question of how much weight, if any, that's to

10   be given.  That's a winning point if you get the normal heavy

11   presumption in favor of plaintiff's choice.  Their argument is

12   it's not even a heavy presumption in this case, they say it

13   should be zilch for the reasons they argue.

14         MR. STEIN:  I think that's inconsistent with the

15   cases.  I think even a foreign corporation who has no presence

16   in the U.S. and picks a forum, I think the case law says even

17   in that context --

18         THE COURT:  It gets modest -- it doesn't get heavy,

19   but it gets modest deference.

20         MR. STEIN:  Given even the negligible amount of

21   inconvenience they're talking about in terms of the Western

22   District of Washington, they haven't overcome the presumption

23   that would have been the case even if it was a foreign

24   corporation that filed in New York.

25         The other point we mention is this could be no

199TTOMA

| | |
|---|---|
| 1 | surprise -- being brought to court in New York can be no |
| 2 | surprise to Nintendo.  They have an office here that has 35 |
| 3 | employees.  They downplay what goes on in the office, they |
| 4 | downplay it and say it's marketing and promotion.  But they |
| 5 | don't deny it, they say it doesn't have any relevance. |
| 6 | THE COURT:  Unless I misremember, there have been |
| 7 | major litigations involving Nintendo in New York.  I don't know |
| 8 | if they were plaintiff or defendant, so I really don't know, |
| 9 | but they're no stranger to the courts of New York.  But I'm not |
| 10 | sure that matters, each lawsuit has to be assessed on its own |
| 11 | terms. |
| 12 | MR. STEIN:  Their activities in New York are not just |
| 13 | general business activities, they have business activities |
| 14 | directed towards the accused product, the infringing product, |
| 15 | the Nintendo 3DS.  The developers of the Web site for the |
| 16 | Nintendo 3DS are in New York.  They have an executive in charge |
| 17 | of one aspect of marketing who has a residence in New York. |
| 18 | Nintendo lists -- there are documents in the papers, they admit |
| 19 | the documents -- albeit, documents aren't important, but even |
| 20 | Nintendo admits they have documents relevant to the case in New |
| 21 | York.  They have identified Tomita U.S.'s prosecution counsel |
| 22 | in DC in their initial disclosures. |
| 23 | THE COURT:  All right.  I'm going to take the |
| 24 | liberty -- you're again making some excellent points, but I |
| 25 | think I have a fair lay of the land.  I want to think about |

SOUTHERN DISTRICT REPORTERS, P.C.          (212) 805-0300

199TTOMA

1    this.  I think it is actually a somewhat close case, but I will

2    get you a decision certainly by the end of September.

3              All right.  So I thank counsel for both sides for

4    their excellent argument, and we'll take the matter sub judice.

5              MR. STEIN:  Thank you, your Honor.

6                                o0o

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25