## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

TOMITA TECHNOLOGIES USA, LLC, and TOMITA
TECHNOLOGIES INTERNATIONAL, INC.,

                              Plaintiffs,

        v.

NINTENDO CO., LTD. and NINTENDO OF AMERICA
INC.,

                              Defendants.

11 Civ. 04256 (JSR)
ECF Case

## DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
## RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR,
## IN THE ALTERNATIVE, FOR A NEW TRIAL

**TABLE OF CONTENTS**

Page

I.    TOMITA OFFERS NO EVIDENCE OF STRUCTURE CORRESPONDING TO
      THE "CROSS-POINT MEASURING MEANS".................................................................. 1

II.   TOMITA OFFERS NO EVIDENCE THAT THE 3DS PERFORMS THE
      FUNCTION OF THE "CROSS-POINT MEASURING MEANS" ................................... 4

      A.    Tomita Offers No Evidence That There Is a "First Offset" Separate from
            the Display Offset ...................................................................................................... 4

      B.    Tomita Offers No Evidence that the 3DS's Parallel Optical Axes Have a
            Cross Point or Cross-Point Information.................................................................... 5

      C.    Tomita Offers No Evidence That the 3D Camera Application Offset Used
            To Display the Images Uses Cross-Point Information ............................................. 5

      D.    AR Games Focal Length Is Not Cross-Point Information........................................ 6

III.  TOMITA OFFERS NO EVIDENCE OF A CORRESPONDING STRUCTURE
      TO THE "OFFSET PRESETTING MEANS" INCORPORATING A "DEFAULT
      OR PRESET VALUE" .................................................................................................... 7

IV.   THE '664 PATENT IS INVALID FOR LACK OF ENABLEMENT ............................... 9

V.    A NEW TRIAL IS NECESSARY ...................................................................................... 9

      A.    Failure to Instruct the Jury as to Claim Construction Was Prejudicial Error ......... 9

      B.    Failure to Construe "Cross-Point" and "Optical Axes" Was Prejudicial
            Error ........................................................................................................................ 10

VI.   CONCLUSION................................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*,
    555 F.3d 984 (Fed. Cir. 2009)..................................................................................4

*Cordis Corp. v. Boston Sci. Corp.*,
    561 F.3d 1319 (Fed. Cir. 2009)..............................................................................10

*Finjan, Inc. v. Secure Computing Corp.*,
    626 F.3d 1197 (Fed. Cir. 2010)................................................................................8

*Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*,
    389 F.3d 1370 (Fed. Cir. 2004)................................................................................8

*Int'l Rectifier Corp. v. IXYS Corp.*,
    361 F.3d 1363 (Fed. Cir. 2004)................................................................................8

*Malta v. Schulmerich Carillons, Inc.*,
    952 F.2d 1320 (Fed. Cir. 1991)................................................................................8

*O2Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008)..............................................................................10

*Sitrick v. Dreamworks, LLC*,
    516 F.3d 993 (Fed. Cir. 2008)..................................................................................9

*Typhoon Touch Techs., Inc. v. Dell, Inc.*,
    659 F.3d 1376 (Fed. Cir. 2011)................................................................................4

*Warner–Lambert Co. v. Teva Pharm. USA, Inc.*,
    418 F.3d 1326 (Fed. Cir. 2005)................................................................................8

**OTHER AUTHORITIES**

Rule 50(a)...................................................................................................................8

61233632.DOCX

In its opposition, Tomita recasts its theory of the case in a manner not supported by the evidence. Tomita now claims that the 3DS infringes because it determines a "focus value," which Tomita calls a "first offset." D.I. 158 ("Tomita Br.") at 5-6, 9-12, 23. According to Tomita, this "first offset" is not the offset used for displaying the left and right images to create a 3D image, but is cross-point information. *Id.* at 10-11. Tomita then argues that there is a "second offset" determined by the "first offset." *Id.* at 10-11, 23.

Tomita relies almost exclusively on Mr. Merritt's trial testimony, citing it extensively to show alleged support for Tomita's post-trial theory of infringement. *Id.* at 5-6, 9-12, 23. An examination of these citations to Mr. Merritt's testimony, however, reveals that none of them actually supports Tomita's "focus value" or "first" and "second offset" theory. In fact, Mr. Merritt never once used the term "focus value." Moreover, Mr. Merritt was not competent to refute Nintendo's extensive testimony and documentary evidence because it is computer source code (which Mr. Merritt could not understand) which dictates how the 3DS actually functions and operates. The 3DS determines one and only one offset which is used to display the two images for 3D display. The 3DS does not use cross-point information.

I.    **TOMITA OFFERS NO EVIDENCE OF STRUCTURE CORRESPONDING TO THE "CROSS-POINT MEASURING MEANS"**

Tomita does not cite to any testimony or documentary evidence that actually identifies a structure in the 3DS that corresponds to one of the three structures identified in the Court's claim construction as the "cross-point measuring means."

Tomita first argues "the evidence of record establishes that the 3DS includes a cross-point data device comprising the 3DS Camera application, as executed by the System on Chip (SoC) and other circuits in the 3DS, and the 3DS's circle pad and touch screen" and cites to Mr. Merritt's testimony as supporting evidence. Tomita Br. at 5. The cited testimony of Mr. Merritt,

however, does not provide any evidence that these components are the same as or equivalent to any of the three corresponding structures identified in the Court's claim construction.[1]  Mr. Merritt made no attempt to explain how any of these components, either separately or in combination, are the same or equivalent to any of the three structures.  For example, in the first citation Tomita relies upon, Mr. Merritt testified:

> Q. Is there a hardware in the 3DS that enables the software to execute?
>
> A. Well, the hardware is in the system on chip and all that mess of integrated circuits.  And you can see the result of it on the display.

*See* Tomita Br. at 5; Tr. 326:7-11.[2]  Clearly, this testimony does not support Tomita's claim that the 3DS has the same or equivalent structure to any of the three structures in the patent.

Tomita next argues that "Mr. Merritt testified that, in the 3DS Camera application, the distance to the cross-point can be manually set by the user at the time of image capture via the circle pad or touch screen."  Tomita Br. at 7.  Notably, the patent specifies, as the Court ruled, that the manual entry technique requires an operator to actually input "the ***distance*** between the cameras and CP."  '664 patent, 9:23-29 (emphasis added) (cited by D.I. 64 at 17).  However, the 3DS, including its circle pad and touch screen, does not permit a user to manually input any distance, and Mr. Merritt's testimony cited by Tomita does not support the proposition that the circle pad or touch screen permit the inputting of the distance between the cameras and the cross-point.  *See* Tr. 293:5-7 (conclusory assertion by Mr. Merritt that the 3DS "can determine cross-

---

[1]       The Court ruled that for the "cross-point measuring means" the "corresponding structure is comprised of a cross-point data device that measures cross-point information as described and shown," and that the three techniques for performing the measurement are:  (1) a "laser distance measuring technique;" (2) "based upon the inclination angle between the optical axes of the left-eye and right-eye cameras;" and (3) where "an operator inputs the distance."  D.I. 64 at 17 (citing Trial Ex. 1, '664 patent, 9:23-35).

[2]       Unless otherwise noted, all cited excerpts of the trial transcript may be found as exhibits submitted with Nintendo's opening brief or Tomita's opposition.

point or center cross-point based on manual input from the user"); 323:19-324:9 ("a manual control by which you can set the offset"); 327:4-12 ("they allow the user to modify the stored cross-point information").  Giving this cited testimony full credit, there is no evidence that the user has the ability to input the distance between the cameras and the cross-point.

Tomita also argues that the 3DS determines a "focus value" "automatically, based on the position of objects picked up by the 3DS's outer cameras."  Tomita Br. at 6.  This argument is flawed for several reasons.  First, Tomita erroneously equates "focus value" with "cross-point information."  As discussed further in Section II below, none of the citations to Mr. Merritt's testimony (Tomita Br. at 6) support the proposition that "focus value" is determined "based on the position of the objects picked up...."  In fact, Mr. Merritt does not even mention the term "focus value."  Second, the Court made clear (in ruling on a demonstrative presented by Tomita) that calculating cross-point information based upon the position of an object picked up by the cameras is *not* an independent structure, but is simply a necessary aspect of the other three techniques that were identified by the Court.  Tr. 669:5-670:5.  All three identified techniques require the presence of an object to function.

Finally, Tomita suggests that a "fourth technique," "in essence, determines the inclination angle between the optical axes of the left-eye and right-eye cameras."  Tomita Br. at 7.  But this suggestion is unsupported by the evidence.  Tomita points only to Mr. Merritt's vague and conclusory statement that "you *can* calculate the angle . . . and thereby you *can* calculate the distance."  *Id.* (citing Tr. 351:3-15).  Other than the unsupported conclusion that the 3DS infringes Claim 7 – a claim that Tomita abandoned at trial – Tomita provides no evidence that the 3DS actually determines the inclination angle between the optical axes of the left-eye and right-eye cameras or how it could be done "based on the position of an object picked up by the

cameras." *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1381-82 (Fed. Cir. 2011) (requiring that computer-implemented structures ***actually*** be configured and not merely that they "can be configured to operate in conjunction with each other"); *Ball Aerosol & Specialty Container, Inc. v. Ltd. Brands, Inc.*, 555 F.3d 984, 995 (Fed. Cir. 2009) (holding that infringement required "a particular configuration" and not merely that the accused device is "reasonably capable of operating in an infringing manner").

## II.   TOMITA OFFERS NO EVIDENCE THAT THE 3DS PERFORMS THE FUNCTION OF THE "CROSS-POINT MEASURING MEANS"

Not only must Tomita show that the 3DS has one of the three structures of the cross-point measuring means, it must also show that structure performs the function of "measur[ing] CP information on the cross-point (CP) of the optical axes of the two video pick-up means."  In an effort to meet this requirement, Tomita introduces a new argument.  Tomita asserts that the "first offset" determined by the 3DS (which Tomita now refers to as a "focus value") allegedly is cross-point information.  Tomita Br. at 10-11, 23.  Tomita then argues that there is a "second offset," used in displaying the images, which is determined in part by the "first offset."  *Id.*  The evidence, however, establishes that the 3DS calculates only one offset which is used for display purposes and does not calculate cross-point information.[3]

### A.   Tomita Offers No Evidence That There Is a "First Offset" Separate from the Display Offset

While Tomita's brief relies on a number of citations to testimony, none of this testimony describes or supports the new claim that the 3DS uses a "first" and "second" offset.  *Id.*. at 10-11.

Contrary to Tomita's repeated argument that "Mr. Merritt explained [that] the focus value is an offset that determines ... the location of the cross-point" (*id.* at 5-6; 9-11, 23), Mr. Merritt

---

[3]    The fact that the 3DS uses an offset to display two images is not new and is not Mr. Tomita's invention.  Tr. 424:7-10.

never actually testified as such.  For example, Tomita states that "[t]he focus value defines a triangle from which the distance to the cross-point can be readily determined" (*id*. at 11), but the citation to Mr. Merritt's testimony (Tr. 262:13-264:15) does not discuss using a "focus value" to determine distances to a cross-point and surely does not discuss it within the context of the operation of the 3DS.[4]  Even more telling, Mr. Merritt never used the terms "focus value," "focal value," "focus length," "focal length," or "focus distance" at any time during the trial.  There is simply no testimony or evidence that the 3DS uses a "focus value" or any other value that corresponds to cross-point information.

### B.    Tomita Offers No Evidence that the 3DS's Parallel Optical Axes Have a Cross Point or Cross-Point Information

As established in Nintendo's opening brief, a system with parallel optical axes, such as the 3DS, will not have a cross-point of those optical axes and consequently cannot measure cross-point information.  D.I. 151 ("Opening Br.") at 9-10.  Tomita does not dispute the fact that the 3DS has parallel optical axes or that parallel lines never intersect; rather, it argues that "focus value" is cross-point information with no further elaboration.  Tomita Br. at 9-10.  As discussed above, however, there is simply no evidentiary support for this argument.

### C.    Tomita Offers No Evidence That the 3D Camera Application Offset Used To Display the Images Uses Cross-Point Information

Contrary to Tomita's argument, there is no evidence that the 3D Camera application determines anything other than the offset used to display the 3D image.  In particular, there is no evidence that it determines a "focus value" corresponding to the cross-point of optical axes.

---

[4]    On page 11 of its brief, Tomita cites to slides 018C, 019 and 042 as the slides that Mr. Merritt is referring to during this testimony.  In fact, a reading of the testimony shows that it was slide 018A, not 018C (Tr. 261:21-262:18) and there is no reference to use of slide 042 during that portion of his testimony.  In any event, none of Tomita's slides were admitted into evidence and thus cannot be used to support the jury's verdict.

Tomita contends that the offset calculated by the 3D Camera application is not actually the offset used for display, but rather a "first offset" which is cross-point information. Tomita Br. at 10-11. The evidence, however, does not support this theory. The testimony cited by Tomita in support of its theoretical "first" offset, which is stored in the fMPOffsetH field, discusses nothing more than the offset used for display. Tr. 334:4-21, 734:25-735:6. In fact, in testimony not cited by Tomita, Mr. Merritt specifically testified that the fMPOffsetH value is used as the offset for displaying the images. Tr. 340:18-341:13. Similarly, the testimony cited by Tomita in support of its theoretical "second offset" discusses only the same single offset determined by the 3DS. Tomita Br. at 11 (citing Tr. 293:2-15, 340:18-341:13, 341:23-342:13, 443:22-444:8.) Thus, the only offset determined by the 3DS is the offset used for display; there is no "first offset" as claimed by Tomita. Tr. 720:8-721:21.

Tomita contends that there is "no dispute over the operation of the 3DS source code." Tomita Br. at 3. Mr. Delattre, the author of the Mobiclip source code, testified without contradiction that the source code does not use cross-point information. Tr. 614:19-23, 623:4-19, 636:1-4. Moreover, Mr. Delattre clearly testified that the nine-zone method does not "recognize any object" in the captured images. Tr. 647:14-17. Taking Tomita at its word, there is "no dispute" that the 3D Camera application does not recognize any objects and therefore cannot use the position of an object to calculate anything.

**D.  AR Games Focal Length Is Not Cross-Point Information**

Again, instead of directly addressing the evidence cited by Nintendo, Tomita puts forward a new argument. Tomita argues that "the AR Games application first determines the location of the AR card and then sets the cross-point based on that location." Tomita Br. at 12. Next, according to Tomita, the AR Games "determines cross-point information in the form of a focal value" which "is an offset based on the distance from the 3DS to the AR Game card." *Id.*

at 11-12.  These theories are not supported by the evidence.

First, contrary to Tomita's arguments, none of the provided citations to the transcript are evidence that the focal length determined by the AR Games software is either an offset or cross-point information.  None of the testimony of Nintendo's witnesses cited by Tomita has anything to do with cross-point information or an offset.  Tr. 685:23-686:3, 829:12-830:9.  Moreover, the cited excerpts of Mr. Merritt's testimony do not support its theory.  Tr. 306:3-7 (no discussion of focal length), 324:23-325:10 (same), 466:13-467:5 (same), 325:23-326:6 (no discussion of focal length or cross-point information), 319:14-321:10 (conflating offset and cross-point without explanation), 337:13-338:12 (same).

Second, it is undisputed that the focal length is not cross-point information because the AR card is not the cross-point of the optical axes of the 3DS's outer cameras.  Dr. Ito, the author of the AR Games source code, testified that the focal length computed by the AR Games software is the distance to the AR Card and has no relationship to the geometry of the outer cameras.  Tr. 682:11-17, 684:6-684:8; *see also* 800:17-25 (Dr. Frahm).  Further, Tomita's own expert, Mr. Merritt, testified that the AR card is "not usually" the cross-point.  Tr. 418:25-419:2.  While Tomita argues that the cross-point is not "a particular location" and can be set to any part of an image, Tomita does not and cannot cite to any evidentiary support.  Tomita Br. at 12.  This is unsurprising as the cross-point of optical axes is at a specific location dictated by the physical geometry of the cameras, not an arbitrary item in the image.

## III.   TOMITA OFFERS NO EVIDENCE OF A CORRESPONDING STRUCTURE TO THE "OFFSET PRESETTING MEANS" INCORPORATING A "DEFAULT OR PRESET VALUE"

Although the Court did not adopt Nintendo's claim construction argument that "presetting" should be part of the function of the "offset presetting means" claim element, the Court's construction of the corresponding structure for the "offset presetting means" element

expressly "<u>requires</u> a default or preset value . . . in order to perform the function of offsetting the two images." Opening Br. at 14 (citing D.I. 64 at 18 (emphasis added)). Thus, to prove infringement, Tomita must produce sufficient evidence that the 3DS uses an identical or equivalent structure that incorporates a "default or preset value." *Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004).

Tomita's opposition, however, fails to provide *any* evidence that the 3DS contains an identical or equivalent structure that incorporates a "default or preset value." Tomita Br. at 14. Tomita does not cite any testimony or documentary evidence that shows that this claim element is found in the 3DS. Instead, Tomita provides several unpersuasive arguments.

First, Tomita argues that Nintendo "never presented any testimony or argument to the jury that it did not infringe on that basis." *Id.* This argument fails as it was Tomita's burden to prove that the 3DS contains every element in the asserted claim. *Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1369 (Fed. Cir. 2004). Second, Tomita argues that Nintendo "never made [this] argument in its Rule 50(a) motion for JMOL." Tomita Br. at 14. This is not true. Declaration of James Blank, Exhibit 1, Tr. 587:22-25 (moving for JMOL on non-infringement both literally and under the doctrine of equivalents). Nintendo's pre-verdict motion for JMOL on non-infringement fully preserved the issue. *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1203 (Fed. Cir. 2010); *Warner–Lambert Co. v. Teva Pharm. USA, Inc.*, 418 F.3d 1326, 1338 n.11 (Fed. Cir. 2005); *Malta v. Schulmerich Carillons, Inc.*, 952 F.2d 1320, 1324-25 (Fed. Cir. 1991). Finally, Tomita argues that Nintendo "does not challenge" whether the 3DS contains the "structure of the offset presetting means." Tomita Br. at 14. This argument is simply incorrect because Nintendo specifically argued in its opening brief that the 3DS does not contain the structure of the offset presetting means. Opening Br. at 14-15.

## IV.   THE '664 PATENT IS INVALID FOR LACK OF ENABLEMENT

Tomita does not contend that the patent discloses a way of determining cross-point information when the optical axes of the cameras are parallel. Instead, Tomita attempts to recast the argument in terms of the operation of the 3DS, but that is not relevant to the issue of validity.

Tomita cites to three trial transcript excerpts, but none of those provides evidence of enablement. Tomita first cites to Dr. Frahm's testimony for the assertion that "parallel camera arrangements were known to those skilled in the art" (Tr. 843:16-19), but it offers no evidence that it was known *how to determine the cross-point* in parallel camera arrangements, which is Nintendo's point. Tomita Br. at 16. Tomita also cites Dr. Frahm's testimony which explains that the patent *does not teach* "how to measure a cross-point when the optical axes of the cameras are parallel." *Id.* (citing Tr. 843:7-8). Plainly, this testimony is evidence of non-enablement. Finally, Tomita relies on Mr. Merritt's unsupported conclusion that "it was clear to [him] that [he] would be able to make and operate what is described in the patent." Tr. 973:21-974:5. Importantly, he gave no explanation on *how* he would actually make such an embodiment. Mr. Merritt's one-sentence, unsupported, conclusion is insufficient to overcome the clear and convincing evidence proffered at trial by Nintendo as set forth in its opening brief at 17-19. *See Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1000 (Fed. Cir. 2008).

## V.   A NEW TRIAL IS NECESSARY

### A.   Failure to Instruct the Jury as to Claim Construction Was Prejudicial Error

The Court's claim construction order found that both the "cross-point measuring means" and the "offset presetting means" were "means-plus-function" limitations. D.I. 52 at 2. Understanding the meaning of these terms has been challenging, even for the parties. Moreover, whether these limitations are present in the 3DS was a key issue in this litigation, and it was prejudicial not to have instructed the jury as to the Court's claim construction.

Tomita argues that there was no prejudice from the failure to instruct regarding claim construction because the Court informed the jury that the parties had presented the Court's definitions during trial, and invited the jury to send the Court a note if they had any questions about the meaning of a term during deliberations. Tomita Br. at 21. However, it is not conceivable that the jury could recall and apply these difficult concepts simply based upon the prior adversarial presentations of the parties absent express instruction from the Court. *See Cordis Corp. v. Boston Sci. Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009).

**B.    Failure to Construe "Cross-Point" and "Optical Axes" Was Prejudicial Error**

The meaning of the terms "cross-point" and "optical axes" were critical to this litigation, but those terms were left unconstrued by the Court as part of claim construction. D.I. 52 at 1-2. As a consequence of the lack of construction, the parties disputed the meaning of those terms throughout the trial, and indeed continue to dispute those terms even in post-trial submissions. Under *O2Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, the failure to construe these terms was prejudicial and warrants a new trial. 521 F.3d 1351, 1363 (Fed. Cir. 2008).

**VI.    CONCLUSION**

For the foregoing reasons and the reasons set forth in Nintendo's Opening Brief, Nintendo respectfully requests that the Court enter judgment as a matter of law in favor of Nintendo or, in the alternative, to grant a new trial.

Dated:  May 9, 2013
         New York, New York                  Respectfully submitted,

                                             KAYE SCHOLER LLP

                                             By:    /s/James S. Blank_____
                                                     James S. Blank
                                                     Scott G. Lindvall
                                                     Soumitra Deka
                                                     Paul I. Margulies
                                             425 Park Avenue
                                             New York, New York 10022
                                             Tel:  (212) 836-8000
                                             Fax:  (212) 836-8629
                                             *Attorneys for Defendants*