**VIA ECF AND HAND DELIVERY**

September 24, 2013                                                                              Kenneth L. Stein
                                                                                              Direct Dial  212-806-5491
                                                                                              Fax  212-806-6006
                                                                                              kstein@stroock.com

Honorable Jed S. Rakoff
United States District Judge
United States Courthouse
500 Pearl Street, Room 1340
New York, NY  10007

Re:    Ongoing royalty in *Tomita Technologies v. Nintendo et al.*,
       Case No. 1:11-CV-04256-JSR

Dear Judge Rakoff:

    The overwhelming majority of cases, including Federal Circuit decisions, have recognized that it is appropriate to set an ongoing royalty rate that is ***greater than*** the royalty rate determined for past infringement.  *See* Tomita Br.[1] at 5-7; Tomita Reply[2] at 2-4; *see also Internet Machines LLC v. Alienware Corp.*, No. 6:10-cv-00023, 2013 WL 4056282, at *19, 21 (E.D. Tex. June 19, 2013) (enhancing jury rate by 50% from 6% to 9).  The reason for that is simple—courts take into consideration that the change in status of the defendant to an adjudged infringer means that any continued infringement by the defendant would be considered willful in a new lawsuit and would likely result in treble damages and, possibly, an award of attorneys' fees.  *See* Tomita Br. at 5-6, citing cases.  Moreover, failing to consider a defendant's changed legal status as "an adjudged infringer of a valid patent" would "create an incentive for every defendant to

---

[1]  "Tomita Br." refers to D.I. 157, the Memorandum of Law in Support of Plaintiff's Motion to Alter or Amend the Judgment Pursuant to Federal Rule of Civil Procedure, Rule 59(e) filed under seal on April 26, 2013.

[2]  "Tomita Reply" refers to D.I. 165, the Reply in Support of Plaintiff's Motion to Alter or Amend the Judgment Pursuant to Federal Rule of Civil Procedure, Rule 59(e) filed under seal on May 9, 2013.

Honorable Judge Jed S. Rakoff
September 24, 2013
Page 2

fight each patent infringement case to the bitter end because without consideration of the changed legal status, there is essentially no downside to losing." *See* Tomita Br. at 7, *citing Paice LLP v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 628 (E.D. Tex. 2009).

In its earlier briefing (prior to the Court's decision on the post-verdict motions), Tomita explained why the ongoing royalty should be set to a rate that is twice the effective royalty rate implied by the jury's verdict. *See* Tomita Br. at 5-18; Tomita Reply at 2-9. Subsequently, the Court issued a remittitur, which Tomita accepted, cutting the jury award, and thereby the implied royalty rate, in half. D.I. 166, 167.

Notably, Tomita's previous explanation as to why the ongoing royalty rate should be twice the jury implied royalty applies equally to doubling the remittitur implied royalty. In particular, Tomita employed a two-pronged approach, which has been used as the appropriate framework in other cases. *See* Tomita Br. at 8-9 (citing cases). In the first prong, Tomita's damages expert, Wayne Hoeberlein, performed a modified *Georgia-Pacific* analysis that takes into consideration changed circumstances between the hypothetical negotiation presented to the jury and a modified hypothetical negotiation taking place at the time of judgment. *Id.* He identified two such changed circumstances—(1) a new license agreement between plaintiff TTUSA and PIT involving the '664 patent, which is at a royalty rate that is 60% higher than the KFE license addressed at trial (*see id*. at 9-10; Tomita Reply at 4-7),[3] and (2) Nintendo's sale of its follow-on product, the 3DS XL, which continues to use the patented features (*see* Tomita Br. at 10-12; Tomita Reply at 7-8). Based on those new circumstances, Mr. Hoeberlein concluded that the ongoing royalty rate should be 60% higher than the jury's implied royalty. Tomita Br. at 10; Tomita Reply at 4-8.

In the second prong, Tomita applied the *Read* factors, as many cases have done, to determine the effect of Nintendo's status as a post-verdict willful infringer on the ongoing royalty. Tomita Br. at 12-18; Tomita Reply at 8-9. Six *Read* factors weigh in

---

[3] Nintendo rehashes arguments from its prior briefing regarding the significance of the TTUSA/PIT agreement. D.I. 168, Letter Brief on the issue of post-judgment ongoing royalties filed September 17, 2013 ("Nintendo Suppl. Br.") at 3-4. Tomita already addressed that issue in its prior briefs and, accordingly, refers the Court to those briefs. *See* Tomita Br. at 9-10; Tomita Reply at 4-7. Notably, however, while the Court found that a royalty rate lower than the KFE rate was applicable to Nintendo's use of the '644 patent in the 3DS, that does not mean that Nintendo should not now pay a proportionally higher ongoing royalty based on the evidence of increased royalties paid by Tomita's licensees.

Honorable Judge Jed S. Rakoff
September 24, 2013
Page 3

favor of enhancement, which, based on the case law, would support an enhancement of the royalty determined by the modified *Georgia-Pacific* analysis of between 33% and 2.5 times. Tomita Br. at 17-18. Using an enhancement at the lower end of that range, Tomita sought an ongoing royalty of twice the jury implied rate. Tomita Br. at 7. Again, that exact same analysis also supports an ongoing royalty at twice the remittitur rate.

Nintendo asserts that "Tomita's arguments in its prior briefing do not translate to or support a doubling of the remittitur royalty rate," apparently because "the prior briefing … is premised on a renewed hypothetical negotiation conducted by its expert using the now-rejected $4.45 as a starting point." Nintendo Suppl. Br. at 3. Nintendo misses the point. The significance of the prior briefing was that the ongoing royalty should be double the jury implied royalty. It is a matter of simple arithmetic to apply the same doubling to the new remittitur royalty, which plainly would now be the new starting point. That is perhaps why the Court did not request additional briefing on the ongoing royalty issue. Again, Mr. Hoeberlein concluded that a renewed hypothetical negotiation would result in a number 60% higher than the original hypothetical negotiation because the TTUSA/PIT agreement is 60% higher than the KFE agreement and the Nintendo 3DS XL further supports the importance of the patented feature. Tomita Br. at 10. The remaining increase, resulting in the doubling of the jury implied rate, was due to Nintendo's changed status as an adjudged infringer. It is separate and apart from Mr. Hoeberlein's *Georgia-Pacific* analysis and courts have relied upon that alone in setting an ongoing royalty to an amount that is 33% to 2.5 times the royalty rate implied by the past damages award. Tomita Br. at 17-18.

The crux of Nintendo's argument is that the Court should not double the remittitur royalty rate, because doing so would "reinstate the jury's rejected damages award as an appropriate measure of ongoing royalties." Nintendo Suppl. Br. at 1, 3. In so doing, Nintendo conflates past damages with ongoing royalties—and gives no weight to the different analyses that are involved in determining each. The fact that the Court rejected the jury's damages award as excessive for past infringement has no bearing on whether Tomita is entitled to an ongoing royalty that is higher than the remittitur royalty rate—again, the remittitur royalty does not take into account Nintendo's changed status as an adjudged infringer or new facts that were not considered by the jury or the Court, as explained above.

Under Nintendo's theory, the ongoing royalty rate should never be above the implied royalty for past damages, whether set by the jury verdict or by remittitur. Presumably, had the jury awarded the remittitur amount (instead of the higher amount

it actually awarded), Nintendo would still be making the same argument that the ongoing royalty rate should not be increased over the implied jury rate. Yet that is against the great weight of the case law.

Nintendo also argues, for the first time, that the Court should set the ongoing royalty rate no higher than "the accepted remittitur royalty rate of *1.36%* of the *wholesale price* of the 3DS." Nintendo Suppl. Br. at 1 and 5 (emphasis added). That argument was never mentioned in Nintendo's previous briefing and is unrelated to the Court's remittitur decision, which is the reason Nintendo gave for seeking additional briefing. At trial, both sides experts testified that the amount of past damages was the number of units sold multiplied by a fixed dollar royalty per unit. *See* Nintendo Suppl. Br., Ex. A, Hoeberlein Tr. 481:12-17 (Mr. Hoeberlein testifying that the damages were $9.78 multiplied times the number of units sold); *see* also Exhibit 1**,** Davis Tr. 907:15-24 (Ms. Davis testifying that the damages were $0.30 times the number of units sold). Nintendo is simply attempting to reduce its ongoing damages obligations here in a manner that is unsupported by the record.

Nintendo further alleges that *Read* factor four—defendant's financial size and condition—should have no impact on the ongoing royalty because the Court found that the '664 patent's technology is "in some sense ancillary to the core functionality of the 3DS as a gaming system" and "the 3DS is not itself profitable." Nintendo Suppl. Br. at 4, citing D.I. 166 at 18-19. But that *Read* factor relates to the defendant's overall financial size and condition—not just the portion attributable to the plaintiff's patented technology. Its purpose is to consider whether the defendant is financially capable of bearing the cost of enhanced damages that may be awarded based on defendant's willful infringement. *See Read Corp. v. Portec, Inc.*, 970 F.2d 816, 827 (Fed. Cir. 1992). There is no question here that Nintendo is financially capable of paying the ongoing royalty rate sought by Tomita. *See* Tomita Br. at 15-16. And Nintendo has not suggested otherwise.

With respect to prejudgment interest and supplemental damages, the parties agree that, after remittitur, the amount of supplemental damages due Tomita is $211,747.50 and the amount of prejudgment interest is $29,483.50, as set forth in Nintendo's Suppl. Br. at 5.

For the foregoing reasons and the reasons set forth in Tomita's prior briefing, Tomita requests that the Court grant (1) ongoing royalties in the amount of $4.45 per 3DS unit on the terms set forth in Tomita Br. at 18 (except for the marking provision, which the Court has denied); (2) supplemental damages in the amount of $211,747.50; and (3) prejudgment interest of $29,482.50.

Respectfully submitted,

Kenneth L. Stein

cc: All counsel of record (via ECF)

# Exhibit 1

```
    D3B8TOM1

1   UNITED STATES DISTRICT COURT
1   SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x
2
3   TOMITA TECHNOLOGIES USA, LLC,
3   AND TOMITA TECHNOLOGIES
4   INTERNATIONAL, INC.,
4
5                Plaintiffs,
5
6            v.                              11 Cv. 4256 (JSR)
6
7   NINTENDO CO., LTD., AND
7   NINTENDO OF AMERICA, INC.,
8
8                Defendants.
9
9   ------------------------------x
10
10                                           March 11, 2013
11                                           10:20 a.m.
11
12  Before:
12
13                       HON. JED S. RAKOFF
13
14                                           District Judge
14
15                          APPEARANCES
15
16  STROOCK & STROOCK & LAVAN LLP
16       Attorneys for Plaintiffs
17  KENNETH L. STEIN
17  IAN DiBERNARDO
18  JOSEPH DIAMANTE
18
19  KAYE SCHOLER LLP
19       Attorneys for Defendants
20  SCOTT G. LINDVALL
20  JAMES S. BLANK
21
21
22
22
23
23
24
25
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300
```

D3B3TOM6                          Davis - direct

1    .75 percent that we talked about that came out of the KFE
2    license analysis that we addressed. And you would end up with
3    a 40 cent per unit number. So that's one number to keep in
4    mind.
5            The second number that I think is relevant is the
6    second bullet. That is the Mobiclip license is for three and a
7    half cents per unit for the first 40 million units, and that
8    included two pieces of software, only one of which is accused
9    of infringement in this case. So we now have a range of three
10   and a half cents on the low end to 40 cents on the high end. I
11   think the number needs to be somewhere in between.
12           Because the '664 patented technology does not drive
13   the sales of this particular product, and because Nintendo is
14   losing over $15 per unit on each of these products sold anyway,
15   I believe that at most, the royalty rate should be 30 cents per
16   unit.
17   Q.  When you apply that rate to your basic unit, what is your
18   conclusion as to the amount of damages in the event that the
19   patent is found to be valid and infringed?
20   A.  That's the number that we saw earlier. If you were to
21   apply 30 cents to each of the 6,791,268 units sold by Nintendo
22   in the United States, in the period of time from March 2011 to
23   December 2012, you would end up with total damages of
24   $2,037,380.
25   Q.  Have you considered the opinions of Mr. Hoeberlein in this

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x
                                                                     :
TOMITA TECHNOLOGIES USA, LLC, AND TOMITA                             :
TECHNOLOGIES INTERNATIONAL, INC.,                                    :
                                                                     :
                Plaintiffs,                                           :
                                                                     :   Case No. 1:11-cv-04256-JSR
       v.                                                            :
                                                                     :
NINTENDO CO., LTD.,  AND                                             :
NINTENDO OF AMERICA INC.                                             :
                                                                     :
                Defendants.                                           :
---------------------------------------------------------------------x

## CERTIFICATE OF SERVICE

     I hereby certify that on September 24, 2013, I caused a true and correct copy of the foregoing Letter brief on ongoing royalty to be served via ECF in accordance with the Federal Rules of Civil Procedure, and/or the Local Rules of this Court, upon the following parties and participants:

           **James S. Blank, Esq.**
           **Scott G. Lindvall, Esq.**
           Kaye Scholer LLP
           425 Park Avenue
           New York, New York 10022
           Tel: (212) 836-8000
           Fax: (212) 836-8629

                                                  *s/ Kenneth L. Stein*
                                                  Kenneth L. Stein