```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
TOMITA TECHNOLOGIES USA, LLC; TOMITA    :
TECHNOLOGIES INTERNATIONAL, INC.        :
                                        :     11 Civ. 4256 (JSR)
             Plaintiffs,                :
                                        :     MEMORANDUM ORDER
             -v-                        :
                                        :
NINTENDO CO., LTD.; NINTENDO OF         :
AMERICA INC.,                           :
                                        :
             Defendants.                :
------------------------------------- x

JED S. RAKOFF, U.S.D.J.
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12-11-13

Beginning on February 25, 2013, the Court conducted a jury trial on claims by Tomita Technologies USA, LLC and Tomita Technologies International (collectively, "Tomita") that the Nintendo 3DS, a handheld gaming console created and sold by Nintendo Co., Ltd., and Nintendo of America, Inc. (collectively, "Nintendo"), infringed U.S. Patent No. 7,417,664 (the " '664 patent"), owned by Tomita. On March 13, 2013, the jury returned a verdict for Tomita in the amount of $30,200,000.00, finding that the 3DS infringed the '664 patent and that the '664 patent was not invalid. The same day, the Court ruled that, as a matter of law, Tomita had failed to prove that Nintendo had willfully infringed the '664 patent by clear and convincing evidence, which it confirmed in a written Memorandum and Order. See Memorandum and Order, No. 11 Civ. 4256, ECF No. 128 (S.D.N.Y. Mar. 13, 2013).

On March 14, 2013, the Court entered judgment in favor of Tomita. Judgment, No. 11 Civ. 4256, ECF No. 127 (S.D.N.Y. Mar. 14,

1

2013). Nintendo moved to set aside the judgment, or, in the alternative, for remittitur, and the motion was fully briefed by the parties. See No. 11 Civ. 4256, ECF Nos. 151, 158, 163. Finally, on August 14, 2013, the Court awarded remittitur to Nintendo for half the damages awarded by the jury, which Tomita accepted on August 21, 2013. See Opinion and Order ("Remittitur Opinion"), No. 11 Civ. 4256, ECF No. 166 (S.D.N.Y. Aug. 14, 2013); Notice of Plaintiff's Acceptance of Damage Awards, No. 11 Civ. 4256, ECF No. 167.

After the acceptance of remittitur by Tomita, the only remaining issues to be resolved are the ongoing royalty rate to be paid for future sales, and the amount of supplemental damages and prejudgment interest due Tomita. As to the latter, the parties agree that Tomita is owed $211,747.50 in supplemental damages and $29,483.50 in prejudgment interest. See 11 Civ. 4256, ECF No. 170. The Court agrees and hereby orders payment of those amounts.

With respect to the ongoing royalty rate, the parties disagree about two basic issues. The first is whether the ongoing royalty rate should be paid as a dollar figure per unit sold or as a percentage of sale price. The second is what the rate should be. Nintendo favors the rate of the implied jury royalty rate halved, per the remittitur, and expressed as a percentage of sales, which would be 1.36% of the wholesale price. Tomita seeks to double the implied royalty rate of the jury award after remittitur, expressed as a dollar figure per unit sold, which would be $4.45 per unit. For

2

the reasons that follow, the Court hereby adopts an ongoing royalty rate of 1.82% of wholesale, to be paid by Nintendo to Tomita quarterly, within thirty days of the end of the quarter.

Whether the ongoing royalty is expressed as a percentage of sales or on a per-unit basis would have no impact on Nintendo's payment to Tomita so long as the price of the 3DS never changes. The rapid pace of technological advancement — and its effect on prices — counsels the Court that it is highly likely that the price will drop with time. If, as Tomita suggests, the ongoing royalty rate were expressed as a flat dollar amount per unit sold, Tomita would capture an increasingly large proportion of each sale as the price falls, even as the technology's reliance on the infringed patent remains constant. This would result in an unearned windfall for Tomita, and, accordingly, the Court prefers an ongoing royalty rate expressed as a percentage of wholesale price.

Determining what percentage that royalty rate should be is no exact science. The implied royalty rate of the jury award was approximately 2.73%, so the implied royalty rate after the acceptance of remittitur is about 1.36%, the rate Nintendo urges the Court to adopt. Tomita, meanwhile, argues with some force that courts routinely increase the implied royalty rate of a verdict after a finding of infringement because the status of the parties has changed, as would the result of the hypothetical negotiation between them. See Georgia-Pacific Corp. v. United States Plywood

Corp., 318 F. Supp. 1116 (S.D.N.Y. 1970), mod. and aff'd, 446 F.2d 295 (2d Cir. 1971), cert. denied, 404 U.S. 870 (1971). For many of the reasons stated in the Court's Remittitur Opinion, the Court adopts an increase over the remittitur's implied royalty rate of one-third. Accordingly, the ongoing royalty rate is two-thirds of the jury's implied royalty rate of 2.73%, or 1.82%.

In sum, Nintendo is ordered to pay Tomita prejudgment interest of $29,483.50, supplemental damages of $211,747.50, and an ongoing royalty rate of 1.82% of wholesale, to be paid quarterly, within thirty days of the close of the quarter. Clerk to enter final judgment and close the case.

SO ORDERED.

Dated: New York, New York
December 7, 2013

JED S. RAKOFF, U.S.D.J.