USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: December 8, 2014

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**TOMITA TECHNOLOGIES USA, LLC,** AND
**TOMITA TECHNOLOGIES INTERNATIONAL, INC.,**
*Plaintiffs-Appellees,*

v.

**NINTENDO CO., LTD.** AND
**NINTENDO OF AMERICA, INC.,**
*Defendants-Appellants.*

---

2014-1244

---

Appeal from the United States District Court for the Southern District of New York in No. 1:11-CV-04256, Judge Jed S. Rakoff.

---

Decided: December 8, 2014

---

KENNETH L. STEIN, Stroock & Stroock & Lavan LLP, of New York, New York, argued for plaintiffs-appellees. With him on the brief were JOSEPH DIAMANTE and IAN G. DIBERNARDO.

STEVEN S. ROSENTHAL, Kaye Scholer LLP, of Washington, DC, argued for defendants-appellants. With him

on the brief were PAUL I. MARGULIES; JAMES S. BLANK and SCOTT G. LINDVALL, of New York, New York.

Before PROST, *Chief Judge,* BRYSON and HUGHES, *Circuit Judges.*

PROST, *Chief Judge*.

Nintendo Co., Ltd. and Nintendo of America, Inc. ("Nintendo") appeal from a final judgment of the U.S. District Court for the Southern District of New York, in which a jury found that Nintendo infringed claim 1 of U.S. Patent No. 7,417,664 ("'664 patent"). The jury further found that the infringed claim was not invalid and awarded damages to plaintiffs-appellees Tomita Technologies USA, LLC and Tomita Technologies International, Inc. ("Tomita").

For the reasons that follow, we affirm the district court's denial of a motion for judgment as a matter of law ("JMOL") on the infringement of the "cross-point measuring means" claim element and the validity of the asserted claim. We also affirm the district court's denial of Nintendo's motion for a new trial based on jury instructions relating to "cross-point," "cross-point information," and "cross-point measuring means." However, we reverse the district court's construction of the "offset presetting means" claim element. We remand for further proceedings to determine whether the accused instrumentalities infringe the '664 patent under the correct claim construction.

## BACKGROUND

### I. Patent

A three-dimensional or 3D movie is typically captured with two cameras providing slightly different images known as stereoscopic images. A viewer perceives a 3D effect when each eye separately views a stereoscopic

image intended for that eye. The strength of the 3D effect varies with the viewing conditions. For example, stretching the images to fit a display that is too large may cause viewer discomfort. The '664 patent aims to address problems relating to the strength of the 3D effect, which the patent refers to as stereoscopic feelings. '664 patent col. 2 ll. 11–24, col. 2 l. 65–col. 3 l. 2.

The '664 patent describes the adjustment of stereoscopic feelings during playback by initially recording the "cross-point information" at the same time the cameras capture the stereoscopic images. *Id.* at col. 2 ll. 1–6. The cross-point is where the optical axes of the two stereoscopic cameras intersect. *Id.* at col. 1 ll. 27–31. In turn, an "offset presetting means" uses "cross-point information" and conditions relating to the playback to provide viewers with the appropriate stereoscopic feelings. *Id.* at col. 9 ll. 3–10. Specifically, the '664 patent describes circuit components adjusting the relative timing between the left-eye and right-eye video images "to provide optimal stereoscopic feeling." *Id.* at col. 10 ll. 16–20. The '664 patent explains that adjusting the relative timing between the left-eye and right-eye video images shifts their relative positions when they are displayed. *Id.* at col. 11 ll. 26–59.

## II. District Court Proceedings

Tomita accuses Nintendo's 3DS gaming system along with its camera application and augmented reality ("AR") game card application of infringing the '664 patent. The 3DS has a 3D-capable top display, 3D-capable outer cameras and a "3D Depth Slider" to adjust the depth of 3D images.

The district court construed both "offset presetting means" and "cross-point measuring means" as means-plus-function elements and adopted Tomita's proposed constructions. On March 13, 2013, the jury returned a verdict for Tomita finding that the 3DS infringed claim 1 of the patent and that claim 1 is not invalid. On April 11,

4        TOMITA TECHNOLOGIES USA, LLC v. NINTENDO CO., LTD.

2013, Nintendo filed a motion for JMOL or a new trial on liability, which the district court denied on August 14, 2013.

Nintendo now appeals the denial of its post-trial motion for JMOL or a new trial. This court has jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

### I. Claim Construction

Claim construction is a question of law that we review de novo. *Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 744 F.3d 1272, 1276–77 (Fed. Cir. 2014) (en banc).

The district court construed the function of "offset presetting means" as "offsetting and displaying said different video images based upon said video image information, said cross-point information and information on the size of the image which is displayed by said stereoscopic video image display device." *Tomita Techs. USA, LLC v. Nintendo Co., Ltd.*, 855 F. Supp. 2d 33, 42 (S.D.N.Y. 2012). The district court then adopted Tomita's proposal for the corresponding structure, which is:

> The structure is comprised of a circuit and a manual entry unit that sets the offset between the right and left eye images. The '664 patent describes various embodiments of this structure in Figures One and Two, which identify it as number 106, Figures Two and Three, which refer to manual entry of information, Figures Four through Eight, and at 3:24–29, 3:39–44, 4:14–19, 4:63–67, 5:21–24; 5:35–37, 5:63–67, 9:3–10, 11:12–12:52, 15:50–67, 16:9–10, 16:15–16, 17:58–63, 18:6–11, 18:49–54, 19:31–35, 19:56–59, and 20:3–5. The structure also includes equivalents of the structures described above.

J.A. 96–97.

The only dispute here is the identification in the specification of the structure of "offset presetting means" corresponding to the claim function under 35 U.S.C. § 112(f). Our review is not an easy task. Tomita's proposed construction says that "various embodiments" of the structure can be found in lengthy citations to the specification. It is unclear what the structure is for a particular embodiment and where in the specification that structure is described. At oral argument, Tomita clarified that its theory of the corresponding structure is box 106 in Figure 2 working in the manner described in Figures 7 and 8. Oral Arg. 20:50–21:32, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/14-1244/all. According to Tomita, the corresponding structure shown in Figures 2, 7 and 8 is any "simple circuit" that performs the claim function. Tomita concedes, however, that Figure 3 also shows a corresponding structure for "offset presetting means." *Id.* at 27:49–28:39. To reconcile these two sets of corresponding structures, Tomita contends that they are alternative embodiments.

We first resolve the question of whether the '664 patent discloses multiple embodiments of "offset presetting means" recited in claim 1. The descriptions of Figures 1 to 3 repeatedly refer to "the present embodiment" in explaining how the different aspects relate to one another. '664 patent col. 8 ll. 7–9, 25, 31, 37, 43, 56, col. 9 ll. 11–16. Figures 4 to 8 are further listed as "view[s] showing how the stereoscopic image is viewed by a viewer." *See id.* at col. 7 ll. 23–32. These figures collectively describe the purported invention without any suggestion of different embodiments of "offset presetting means." *See id.* at col. 7 l. 56–col. 10 l. 45, col. 11 l. 12–col. 12 l. 52. Tomita quotes nothing from the descriptions of Figures 2 and 3 that identify those figures as contemplating multiple embodiments of the purported invention.

6        TOMITA TECHNOLOGIES USA, LLC v. NINTENDO CO., LTD.

Instead, Tomita infers "plainly different embodiments" because Figure 3 and its descriptions fail to identify explicitly the components that correspond to box 106 of Figure 2. Appellees' Br. 55–56. This inference fails upon review of the descriptions of Figures 2 and 3. The descriptions of Figure 2 introduce a larger circuit comprising the "offset presetting means" among other components. '664 patent col. 8 l. 60–col. 9 l. 10. The details of this larger circuit "of the present embodiment" are "shown in FIG. 3." *Id.* at col. 9 ll. 11–16. The '664 patent is clear that Figures 2 and 3 refer to the same embodiment of a larger circuit that comprises the "offset presetting means." Within that same larger circuit referred to in Figures 2 and 3, there is necessarily only a single embodiment of the "offset presetting means."





FIG.3

We address next Tomita's contention that Figures 2, 7, and 8 describe the corresponding structure for "offset presetting means." The descriptions of Figure 2 introduce a larger circuit comprising the "offset presetting means" and paraphrase the claim language for the same. *See id.* at col. 8 l. 60–col. 9 l. 10 ("The stereoscopic video image signal generating circuit 101 comprises . . . offset presetting means for presetting a [sic] offset value . . . ."). However, repeating or paraphrasing means-plus-function claim language in the specification alone does not describe any structure. *See Ergo Licensing, LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1363–64 (Fed. Cir. 2012) ("The recitation of 'control device' provides no more structure than the term 'control means' itself, rather it merely replaces the word 'means' with the generic term 'device.'"). Without disclosing any structure of "offset presetting means," the descriptions of Figure 2 fail to provide the corresponding structure for the claim element.

Figures 7, 8 and their descriptions also do not disclose sufficient structural details. The specification uses Figures 7 and 8 to describe "the amount of the offset of the

right-eye and left-eye video images." *Id.* at col. 12 ll. 15–16. Calculating the amount of offset provides only functional information for "offsetting" but not its structure. Tomita concedes as much. Appellees' Br. 53 (stating that Figures 4, 7 and 8 describe "[t]he manner in which the system determines the offset"). Even if Figures 7 and 8 were to disclose a structure for the "offsetting" aspect, they do not provide the full structure required by the claim function. The claim function recites "offsetting and displaying." The "displaying" aspect of the claim function is not described at all in Figures 7, 8 and their descriptions. Figures 7, 8 and their descriptions cannot provide sufficient structure that performs the claim function. *See Noah Sys., Inc. v. Intuit Inc.*, 675 F. 3d 1302, 1314 (Fed. Cir. 2012) (requiring that the corresponding structure "address both aspects of this functional language").

Figures 2, 7, 8 and their descriptions, in fact, do not use "circuit" or any other structural terms in connection with any discussion of "offset." *See* '664 patent col. 8 l. 54–col. 9 l. 10, col. 12 ll. 15–52. Tomita thus does not quote from those descriptions to justify using the word "circuit" in its proposed construction. Instead, Tomita quotes the phrase "simple circuit" from the summary of dependent claim 11. This "simple circuit," in the proper context, refers to:

> said offset presetting means includes timing control means for controlling the timing of the read-out of video image data from said frame memory for left-eye video image and/or said frame memory for right-eye video image; and said timing control means presets the offset of said left-eye video image and right-eye video image by advancing or delaying the timing of the read-out of the video image data from one of said frame memories for left-eye and right-eye video images relative to the timing of the read-out of the video image data

Case 1:11-cv-04256-JSR Document 182-1 Filed 12/08/14 Page 9 of 16
Case: 14-1256 Document: 42-2 Page: 9 Filed: 12/03/2014

TOMITA TECHNOLOGIES USA, LLC v. NINTENDO CO., LTD. 9

> from the other of said from memories for the left-eye and right-eye video images.

*Id.* at col. 5 ll. 9–20. Tomita omits this detailed structure entirely but quotes "simple circuit" out of context to interpret "offset presetting means" as covering any circuit that performs the claim function. Stripped of the structure in the specification, Tomita's interpretation is no more specific than defining "offset presetting means" in purely functional terms. Such purely functional interpretation is prohibited under 35 U.S.C. § 112(f). *See Med. Instrumentation & Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1211 (Fed. Cir. 2003).

Tomita further contends that Figures 2, 7, 8 and their descriptions show structure because its expert says so. However, expert testimony cannot gloss over the total absence of structure in the cited portion of the specification. *Cf. Default Proof Credit Card v. Home Depot USA*, 412 F.3d 1291, 1302 (Fed. Cir. 2005) ("[T]he testimony of one of ordinary skill in the art cannot supplant the total absence of structure from the specification."). The lack of structure for "offset presetting means" in Figures 2, 7, 8 and their descriptions cannot be cured by the Tomita expert's conclusory statements to the contrary.

Finally, we identify the corresponding structure for "offset presetting means." The parties agree that Figure 3 and its descriptions contain the corresponding structure. Oral Arg. at 27:49–28:39. In particular, "timing control unit 32" in Figure 3 operates to "provide optimal stereoscopic feeling" based on "CP information 12" and "screen size information" among others. *Id.* at col. 10 ll. 3–20. "[T]iming control unit 32" thus performs the "offsetting" portion of the claim function. Tomita, in fact, concedes that in Figure 3, it would "identify primarily box 32" as the "offset presetting means." Oral Arg. 28:18–39. The "displaying" portion of the claim function is performed by "the switch control unit 41 preset[ting] the timing of

switching of the signal switch 40 for writing of video data into synthesis frame memory 50." '664 patent col. 10 ll. 26–29.

Accordingly, we reverse the district court's adoption of Tomita's proposed corresponding structure for "offset presetting means." The correct corresponding structure should be: timing control unit 32, signal switch 40, switch control unit 41, and synthesis frame memory 50 described in Figure 3 and column 9 line 44 to column 10 line 29 and equivalents thereof.[1]

## II. JMOL of Non-Infringement and Invalidity

We review a denial of a motion for judgment as a matter of law ("JMOL") under regional circuit law. *Lazare Kaplan Int'l, Inc. v. Photoscribe Techs., Inc.*, 628 F.3d 1359, 1366 (Fed. Cir. 2010). The Second Circuit reviews a denial of JMOL de novo. *Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 18 (Fed. Cir. 2012) (citing *AMW Materials Testing, Inc. v. Town of Babylon*, 584 F.3d 436, 456 (2d Cir. 2009)). In the Second Circuit, a district court may set aside the jury's verdict and enter judgment as a matter of law pursuant to Rule 50 only where there is "such a complete absence of evidence supporting the verdict . . . or there is such an overwhelming amount of evidence in favor of the movant." *AMW Materials Testing*,

---

[1] We depart from Nintendo's proposed construction because it includes components that do not actually perform the claim function. *See Asyst Techs., Inc. v. Empak, Inc.*, 268 F.3d 1364, 1371 (Fed. Cir. 2001) ("The corresponding structure to a function set forth in a means-plus-function limitation must actually perform the recited function, not merely enable the pertinent structure to operate as intended . . . ."). We also decline to adopt Tomita's inclusion of a "manual entry unit" for the same reason.

584 F.3d at 456. This requirement is similar to the substantial evidence standard. *Whitserve*, 694 F.3d at 18.

### A. Non-infringement

#### 1. "offset presetting means"

Nintendo argues that the judgment of infringement should be reversed because Tomita has not proved that the 3DS satisfies this claim element under the correct construction. Tomita argues that if the district court's construction is reversed, Tomita should be given the opportunity to show infringement under any new construction of this claim element.

We have now construed this claim element. *See supra* at 10–10. Because the jury was not presented with the question whether the 3DS infringes the '664 patent under the correct construction, we remand for further proceedings to determine whether the 3DS infringes "offset presetting means."

#### 2. "cross-point measuring means"

Nintendo argues that the 3DS cannot satisfy the function of this claim element because of the following syllogism: camera bodies arranged in parallel have parallel optical axes that can never intersect to have a "cross-point"; the camera bodies of the 3DS are arranged in parallel; so, the 3DS has parallel optical axes that do not have a "cross-point." Nintendo thus insists that the 3DS cannot measure "cross-point information." Nintendo contends instead that the accused software application uses image processing, which cannot provide "cross-point information."

We cannot agree with Nintendo. The major premise of Nintendo's syllogism was disproved by Tomita's submission of a 1993 technical paper. That paper shows cameras arranged in parallel can have intersecting optical axes under particular optical configurations. Indeed,

Case 1:11-cv-04256-JSR Document 212-2 Filed 12/08/14 Page 12 of 16
Case: 14-1242 Document: 42-2 Page: 12 Filed: 12/08/2014

12         TOMITA TECHNOLOGIES USA, LLC v. NINTENDO CO., LTD.

claim 8—dependent from claim 1—explicitly claims cameras "disposed in a parallel relationship." Parent claim 1 cannot exclude the scope of dependent claim 8. *See* 35 U.S.C. § 112(d) (["A] claim in dependent form shall contain a reference to a claim previously set forth and then specify a further limitation of the subject matter claimed."). Claim 1 thus cannot be read to exclude cameras that are arranged in parallel. What is important is that the optical axes of the accused cameras intersect, and Tomita presented a theory of how that is so which the jury apparently credited.

Moreover, Nintendo does not dispute that Tomita presented evidence to support the allegation that the "focus value" in the 3DS satisfies "cross-point information." Instead, Nintendo argues that Tomita failed to prove certain factual issues under Nintendo's own interpretation. *See, e.g.*, Reply Br. 12 ("Tomita provides no evidence showing how the 'focus value' . . . is used to determine any distance relating to a cross-point of optical axes, as opposed to the convergence of displayed images."). Failure to abide by Nintendo's own interpretation of facts does not mean that there was a complete absence of evidence supporting the verdict.

Nintendo next contends that the 3DS does not satisfy the "cross-point measuring means" because the 3DS does not have the corresponding structure that uses any of the three techniques purportedly required by the district court's construction. Instead, Tomita's infringement theory was based on a fourth technique "based upon the position of picking up of an object." Nintendo contends that this "fourth technique" was outside of the district court's construction. Nintendo also disputes that the 3DS uses this "fourth technique" because "the 3DS does not recognize objects in images." Appellants' Br. 44-47.

Nintendo is mistaken. The district court's construction includes the description in column 3 lines 50–67 of

the '664 patent.[2]  This cited portion of the specification mentions "said cross-point measuring means calculates the cross-point based upon the position of picking-up of an object." '664 patent col. 3 ll. 64–66.  Calculating the cross-point "based upon the position of picking up of an object" is what Nintendo refers to as the "fourth technique" and it is included in the district court's construction.  Moreover, Nintendo does not rebut Tomita's citation of evidence—including source code documentation, patent application, and Tomita's expert testimony—used to show that the 3DS measures "focus value" based on objects in the scene thus allegedly satisfying the technique of "calculat[ing] the cross-point based upon the position of picking-up of an object."

Accordingly, we conclude that the jury's finding that the 3DS satisfies the "cross-point measuring means" was supported by substantial evidence.  We therefore affirm the district court's denial of JMOL on the infringement of "cross-point measuring means."

## B.  Invalidity

Nintendo contends that the '664 patent lacks enablement "[t]o the extent claim 1 includes a device with cameras having parallel optical axes" and lacks adequate written description "[t]o the extent claim 1 of the '664 patent is construed to cover pick-up means having parallel optical axes as in the 3DS." Appellants' Br. 54–59.

These invalidity contentions are the reverse of Nintendo's non-infringement theory based on "cross-point measuring means," namely that the cameras of the 3DS have parallel optical axes that can never intersect to have a "cross-point."  *See supra* at 11.  Reasoning in reverse,

---

[2] Nintendo does not appeal the construction of "cross-point measuring means."  We thus assume this construction without passing judgment on its correctness.

14   TOMITA TECHNOLOGIES USA, LLC v. NINTENDO CO., LTD.

Nintendo infers that finding the 3DS to infringe requires interpreting claim 1 to encompass cameras with parallel optical axes. This is not what Tomita presented in its infringement theory. Instead, as discussed above in section II.A.2, Tomita contended that although the cameras of the 3DS are disposed in parallel, they have intersecting optical axes.

Nintendo has not shown that the infringement verdict must have rested on an incorrect assumption by the jury that claim 1 encompasses cameras with parallel optical axes thus rending the claim invalid. Accordingly, the district court did not err in denying Nintendo's JMOL motion with respect to invalidity.

### III. Motion for a New Trial

We review a denial of a motion for a new trial under regional circuit law. *Lazare Kaplan*, 628 F.3d at 1366. The Second Circuit reviews the denial of a motion for new trial for abuse of discretion. *Id.* (citing *SEC v. DiBella*, 587 F.3d 553, 563 (2d Cir. 2009)). In the Second Circuit, "[a] motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." *Armstrong v. Brookdale Univ. Hosp. & Med. Ctr.*, 425 F.3d 126, 133 (2d Cir. 2005).

Nintendo argues that a new trial is warranted because the district court failed to properly instruct the jury on claim construction. Specifically, Nintendo complains that the improper jury instruction allowed Tomita to prove infringement that departs from the district court's claim construction of "cross-point measuring means."

Nintendo's contentions are again misplaced. The district court's instructions made clear to the jury that it is not free to apply its own reading of disputed terms to the facts of the case. The district court is not required to use rigid, legal language to instruct the jury. The district

Case 1:11-cv-04256-JSR Document 421-2 Filed 12/08/14 Page 15 of 16
Case: 14-1243 Document: 48-2 Page: 15 Filed: 08/25/2014

TOMITA TECHNOLOGIES USA, LLC v. NINTENDO CO., LTD.      15

court has the discretion to determine "the particular form and precise nature of jury instructions." *Sulzer Textil AG v. PICANOL NV*, 358 F.3d 1356, 1366 (Fed. Cir. 2004). Moreover, we have previously disposed of Nintendo's argument that Tomita departed from the district court's claim construction of "cross-point measuring means" in section II.A.2. *See supra* at 11–13. Nintendo has thus failed to establish prejudice flowing from the alleged error in the district court's jury instructions.

Finally, Nintendo argues that a new trial is warranted because the district court declined to construe "cross-point," allowing Tomita to confuse the jury by conflating the claim terms "cross-point" and "cross-point information" with "offset."

We are not persuaded. The '664 patent is clear in its use of "cross-point" and further equates it with "convergence point." '664 patent at col. 1 l. 28. At least "convergence point" had an ordinary meaning to a skilled person. *See* J.A. 9601. Tomita's discussions of "cross-point" did not differ with how it was used in the '664 patent. Moreover, Nintendo fails to rebut Tomita's response that it distinguished the two offsets allegedly determined by the 3DS—one corresponding to focus value and "cross-point information," and the other one corresponding to the "offset" for displaying in the '664 patent. *Compare* Appellees' Br. 65–66 *with* Reply Br. 29–33 (focusing on Tomita's alleged departure from the district court's construction of "cross-point measuring means").

Nintendo has failed to show that the district court abused its discretion in denying Nintendo's motion for a new trial. Accordingly, we affirm the district court's denial of Nintendo's motion for a new trial based on jury instructions relating to "cross-point," "cross-point information" and "cross-point measuring means."

**AFFIRMED-IN-PART, REVERSED-IN-PART, VACATED-IN-PART AND REMANDED**

16   TOMITA TECHNOLOGIES USA, LLC v. NINTENDO CO., LTD.

## COSTS

Each party shall bear its own costs.